Leonard *et al. v.* Broughton *et al.*

We find no error in the record for which the judgment of the circuit court should be reversed.

Judgment affirmed.

Filed Nov. 1, 1889.

———————◆———————

## No. 13,211.

### LEONARD ET AL. *v.* BROUGHTON ET AL.

JUDGMENT.—*Upon Pre-existing Obligations.—Purchasers at Sheriff's Sale.— Judgment on Official Bond.—Nunc Pro Tunc Entry.—Suit to Quiet Title.—* A suit to quiet title can not be maintained by the purchasers of real estate at a sheriff's sale on executions issued upon judgments rendered on pre-existing obligations, against the purchasers of said real estate at a sheriff's sale upon a judgment rendered against the principal and his sureties on an official bond, the last named judgment having been at first incorrectly entered up, and a *nunc pro tunc* entry for its correction having been made subsequently to the acquirement of a judgment lien by the other purchasers.

SAME.—*Rights of Parties.—Nunc Pro Tunc Entry.—Effect of.—*Where judgments are entered upon pre-existing obligations, the rights of the parties are fixed prior to the rendition of the judgments, and if it does not appear that they were not misled, or parted with anything of value, or acquired any rights during the interval between the date the judgment on the official bond should have been properly entered and the making of the *nunc pro tunc* entry, except the acquirement of a judgment lien, they are bound by the corrected judgment as of the date of the original entry.

SAME.—*Nunc Pro Tunc Entry.—Who Bound by.—Rights of Parties.—How Determined.—Superior Equities.—*All persons are bound by the entry of a *nunc pro tunc* judgment, and their rights are to be determined as if said judgment had been at first entered and signed, unless they have some superior or intervening equities in their behalf.

SAME.—*Judgment Creditor.—General Lien of.—What Equities Subject to.—*The

general lien of a judgment creditor upon lands of his debtor is subject to all equities existing against the lands of the judgment debtor in favor of third parties at the time of the recovery of the judgment.

SAME.—*Judgment Creditor.—Collection of Judgment.—Failure to Enforce.—Effect of.—Third Parties.*—A judgment creditor loses no rights by the mere failure to enforce the collection of his judgment, where the rights of third parties have not intervened, and he has no knowledge of their claims.

SAME.—*Upon Official Bond.—Real Estate.—When Lien Upon.—Corrected Judgment.—Lien of.*—Judgments on bonds payable to the State bind the real estate of the debtor from the date of the commencement of the action. If, in such a case, the first judgment for any reason is not binding, and the action is pending until the same is corrected, the judgment lien would relate back to the date of the commencement of the action.

EXECUTIONS.—*Issuance of After Ten Years.—Section 675, R. S. 1881, Construed.—Relates Wholly to the Remedy.*—Section 675, R. S. 1881, providing for the issuance of executions after the lapse of ten years, relates wholly to the remedy, and applies to the issuance of executions on all judgments rendered before, or after, its enactment, and is clearly within legislative authority.

SAME.—*Leave of Court to Issue.—Sale Made Without Leave.—Who can Complain of.—Judgment Creditor.*—Even if it should be necessary to have leave of court to issue an execution, the execution being issued and sale having been made upon it without objection from the judgment debtor, the sale made upon it would be valid, and could not be questioned by other judgment creditors.

From the Noble Circuit Court.

*T. R. Marshall, W. F. McNagney* and *H. G. Zimmerman,* for appellants.

*A. A. Chapin* and *R. P. Barr,* for appellees.

OLDS, J.—This is an action to quiet title. There was a demurrer sustained to the complaint, and exceptions taken, and judgment on demurrer for defendants. Error is assigned as to the ruling of the court on the demurrer to the complaint.

The plaintiffs in this action are Willington Y. Leonard, Henry W. Franks and Merritt C. Skinner, and the defendants are Samuel Broughton, Jacob C. Zimmerman, Charles M. Clapp, as administrator of the estate of Milton M. Clapp, deceased, and Peter Sunday. The complaint is very lengthy

and sets out the facts in detail and with particularity, showing that the plaintiffs became the purchasers at a valid sheriff's sale of the real estate described in the complaint, on executions duly issued upon three valid judgments rendered in the Noble Circuit Court, at various dates from the 6th day of November, 1879, and the dates of the issuing of the executions thereon, one of the judgments on which executions issued and being the senior judgment on which said executions issued, was a judgment in favor of the plaintiff Franks, rendered November 6th, 1879, for $136.41, and costs; one a judgment rendered in favor of Uriah Franks against said Mendenhall and plaintiff Leonard, January 21st, 1880, for $235.50, and costs, on which Leonard was surety, and the other a judgment in favor of said Uriah Franks against said Mendenhall and plaintiff Skinner, rendered January 21st, 1880, for $577.79, and costs, on which Skinner was surety, which two last judgments for which they were respectively liable said Leonard and Skinner had paid before the issuing of said executions, and said executions were respectively issued for their use, and the executions were all duly issued and levied upon the real estate described in the complaint as the property of the principal judgment debtor, Isaac Mendenhall; that said real estate was duly advertised and sold by the sheriff of said Noble county to satisfy said executions and judgments on the 22d day of December, 1883, and the plaintiffs became the purchasers of the same for the sum of $700, and a certificate of purchase was duly issued; that said real estate was not redeemed from said sale, and after the expiration of one year, on May 25th, 1885, on surrender of the sheriff's certificate a deed was duly issued to said purchasers; and that said $700 purchase-money at said sheriff's sale was applied, first to the liquidation of the executions in favor of plaintiff Franks in full, and the balance applied *pro rata* to the payment of the executions in favor of said Leonard and Skinner. The complaint further alleges and sets out in detail the fact that Mendenhall made a fraudulent sale and

conveyance of said real estate to one White on the 31st day of December, 1878, and White to Chapman, and the prosecution of an action to set aside such sale and conveyance, and that notice of such proceedings was filed in the *lis pendens* record of said county, and a recovery had in said cause and a decree entered setting aside such sale and conveyance, and an order for White and Chapman to convey the real estate, which they did, conveying the same to the plaintiffs; that by reason of such facts alleged in the complaint, the plaintiffs are the owners in fee simple of the said real estate described in the complaint.

It is then averred in the complaint that the defendants Broughton, Zimmerman, and Clapp as administrator, claim title to the same real estate in the manner following: That at the March term of said Noble Circuit Court, 1875, a certain action was therein pending wherein the State of Indiana, on the relation of James C. Stewart, auditor of Noble county, was plaintiff, and the defendants herein, Samuel Broughton and Jacob Zimmerman, and the defendant Clapp's intestate, William M. Clapp, together with Nelson Prentiss, Ephraim Cramer, Cornelius Grim, and Isaac Mendenhall, and Isaac Mendenhall as the administrator of the estate of John Mendenhall, deceased, were defendants; that said action was brought upon the bond of the said Isaac Mendenhall, theretofore late county treasurer of said county, and the said other defendants as sureties thereon, for the recovery of the sum of $1,360, for an alleged defalcation by said Isaac Mendenhall as such county treasurer, and which sum it was alleged he had failed to account for and pay over to his successor in going out of office; that in said cause in said court, upon appearance having been by said defendants therein first entered, and upon answers filed to the complaint on said bond, and after issue joined therein, a trial was had and a finding made for the plaintiff therein, and judgment rendered by the court thereon on the 10th day of March, 1875, for $1,360, and entered up in order-book No. 7, page 53, of said

court, against said Isaac Mendenhall alone ; although said
day's proceedings of said circuit court for said 10th day of
March, 1875, including said judgment last aforesaid, were,
by said clerk of said court, entered and written up in said
order book of said circuit court, yet the plaintiffs say that
neither said day's proceedings nor the entry of said judg-
ment were then, or at any other time, ever signed by the
judge rendering said judgment, or before whom said pro-
ceedings were had ; nor has said judgment entry and day's
proceedings of said court for said day, or either of them, ever
been signed by any judge of said court, or of any court, or
by any judge whatever ; but, on the contrary, said day's pro-
ceedings, and said order-book entry of said judgment, each
and both remain wholly unsigned by any judge of any court,
or by any judge whatever.

Plaintiffs further say that, on the 8th day of January,
1878, the attorney for the plaintiff in the judgment last
named filed with the clerk of said court a written precipe
for an execution on said judgment against said Mendenhall,
so rendered on said 10th day of March, 1875, as aforesaid ;
that, on the 19th day of January, 1878, pursuant to said
order, said clerk issued an execution on said last named judg-
ment, directed to the sheriff of Noble county, for service,
which said writ came to the hands of the sheriff on the last
named day aforesaid ; and plaintiffs say that afterwards, on
the 7th day of March, 1878, the then county commissioners
of said county endorsed upon said execution in writing, by
them severally signed as such county commissioners, an order
and direction to said sheriff to hold said writ, and not to ex-
ecute the same until further orders from said county commis-
sioners, which order is as follows : " The sheriff will await
further orders before enforcing collection on the within writ.
March 7th, 1878." Signed by Wm. Broughton, John P.
McWilliams, and William Imes, county commissioners. And
said plaintiffs say that said order and directions never having
been cancelled, recalled, or modified, the said execution was

by said sheriff held until the expiration thereof, when, on the 11th day of September, 1878, the said sheriff made return thereof to the clerk of said court, endorsed thereon, as follows : " By within order of the county commissioners, this writ was held, and the full time having expired, it is now by their order returned unsatisfied this 11th day of September, 1878.        NATHANIEL P. ENGLES, *Sheriff*."

It is further averred that afterwards, on the 22d day of September, 1881, the then county auditor of said Noble county, by his attorney, filed in the office of the clerk of said court a motion to correct said judgment ; that said motion was entitled as follows : " The State of Indiana, on relation of James A. Stewart, auditor of Noble county, vs. Isaac Mendenhall, Samuel Broughton, Jacob C. Zimmerman, William M. Clapp, Charles M. Clapp, administrator of the estate of William M. Clapp, deceased, Nelson Prentiss, Ephraim Cramer, Cornelius L. Grim and Isaac Mendenhall, as administrator of the estate of John Mendenhall, deceased ;" that it was alleged in said motion that at the March term, 1875, of said court, the action was pending upon the bond as aforesaid, and that the defendants in said action appeared thereto ; issues were joined and the cause submitted to the court for hearing and trial on an agreed statement of facts, and the court found for the plaintiff in said action against all of the defendants in the sum of $1,438.38 ; and that said court thereupon rendered judgment against all of said defendants in accordance with said finding ; and that, notwithstanding the finding so made and judgment so rendered and pronounced by the court, the clerk of said court, by inadvertence, mistake, and misprision, entered up said judgment in the order-book of said court for the sum of $1,360, instead of $1,438.38, and against the defendant Isaac Mendenhall alone, instead of against him and all of the other defendants, as the same was given and pronounced, and should have been rendered, and said motion further recited the said agreement upon which said judg-

ment was rendered, and a copy of the entry and minutes made by the judge on the judge's docket, and said motion asked for the correction of said judgment as to the amount, changing the said amount from $1,360 to $1,438.38, and by making the same a judgment against all of said defendants instead of a judgment against said Isaac Mendenhall alone, and upon the making of such corrections that the order-book entry be signed, and that such correction be made now as of said March 10th, 1875; that the defendants named in said motion, except said Cornelius Grim and Ephraim Cramer, appeared to said motion, and filed their answers therein; that upon issue being joined in said cause or proceeding on said motion and answers, the same was submitted to the court for hearing and trial. Whereupon, on the 10th day of January, 1883, the court found for the relator and made an order directing said judgment to be entered up against all of said defendants, *nunc pro tunc,* for the sum of $1,360, which order and judgment was thereupon, by the clerk of said court, entered up in the order-book of said court and signed by the judge, but that the original order-book entry was not, nor has it ever been, signed by any judge. And it is further averred that long before the filing of said motion and the making of said *nunc pro tunc* entry, the term of office of said Stewart had expired, and said Keiser had been elected and was serving as his successor; that afterwards, on the 2d day of April, 1883, and without having first applied and obtained leave of court therefor to issue an execution on said alleged judgment of March 10th, 1875, a precipe was filed, and an execution was issued on the judgment so ordered, on the 10th day of January, 1883, to be entered up, *nunc pro tunc,* and delivered to the sheriff of said county, and he levied the same upon the real estate in controversy, described in the complaint, and said sheriff duly advertised and sold the same on the 19th day of May, 1883, to defendants, appellees herein, Broughton, Zimmerman, and Clapp, and issued to them a certificate of purchase for the same, and at the ex-

piration of one year from such sale a deed was duly issued to said defendants for the same, and defendants now claim title to said premises by virtue of said sale and sheriff's deed, and not otherwise; that before said last named sale to defendants, the said defendants had full. knowledge and notice of all the rights and claims, legal and equitable, in and to said real estate of said plaintiffs; that at the time of the rendition of said judgment of March 10th, 1875, against said Isaac Mendenhall, the said Mendenhall then was, and thereafter continued to be, until the 31st day of December, 1878, the owner and in the open and notorious possession of a large amount of personal property subject to execution, in said county, of the value of $2,000; that from March 10th, 1875, to December 31st, 1878, said judgment against Mendenhall for $1,360, with interest and costs, could have been collected of said Mendenhall and made out of the personal property aforesaid had the said plaintiff and the said plaintiff's relator, his agents and attorneys in said last named judgment, or either of them, exercised due and reasonable diligence in that behalf, but that they took no steps toward the collection of the same; that, on the contrary, plaintiffs had used all possible diligence for the collection of their judgments.

It is further averred that the defendants herein permitted said lands to become delinquent for the non-payment of taxes, and permitted the same to be sold on the 9th day of February, 1885, by the treasurer of Noble county, for taxes then due and accrued thereon, in the sum of $116.48, and defendants became the purchasers for said sum at said tax sale, and paid said sum, and took a certificate of purchase for the same, and still hold and retain said certificate of purchase.

That said claim of title to said real estate by said defendants in virtue of and by reason of the matters and facts in the premises alleged, is adverse to the plaintiffs thereto, and that said defendants' claim of title by reason of the facts al-

leged is without right, unlawful, and unfounded, and casts a cloud upon the plaintiffs' title. Prayer for quieting plaintiffs' title.

We have stated in brief the material allegations in the complaint.

By the averments in the complaint, it appears that the execution sale, at which the appellants herein became purchasers of the real estate, was made to satisfy three executions, one issued on a judgment rendered in favor of appellant Franks against Isaac Mendenhall, one issued on a judgment rendered in favor of Uriah Franks against Isaac Mendenhall and appellant Leonard, Leonard being surety, and having paid the judgment and execution issued for his use, and the other issued, on a judgment rendered in favor of Uriah Franks against Isaac Mendenhall and appellant Skinner, Skinner being surety and having paid the judgment execution issued for his use ; the two latter judgments were rendered on the same date and subsequent to the former and the proceeds of the sale were applied first to the payment of the senior judgment in favor of appellant Franks, and the balance applied *pro rata* on the two junior judgments, and they stand in the position of judgment creditors holding judgments rendered on pre-existing debts, and no averments as to having parted with anything of value or extending credit to the judgment debtor on the faith of his real estate being unencumbered.

It is important first to consider the effect of the *nunc pro tunc* entry of the judgment. The court, on the 10th day of January, 1883, entered up a judgment as of the date of March 10th, 1875, for $1,360. This judgment was entered of record in the order-book and signed by the judge.

The effect of this record was to enter a judgment as of the former date, and when entered it stood as a judgment of that date, and had the same effect as if it had been properly entered of record and signed by the judge on March 10th, 1875.

Freeman, in his work on Judgments, states the law in regard to *nunc pro tunc* entry of judgments thus: " The entry

of judgments or decrees *nunc pro tunc,* is intended to be in furtherance of justice. It will not be ordered, so as to affect third persons, who have acquired rights, without notice of the rendition of any judgment. Generally such conditions will be imposed as may seem necessary to save the interests of third parties, who have acted *bona fide,* and without notice; but if such conditions are not expressed in the order of the court, they are, nevertheless, to be considered as made a part of it by force of the law." Freeman Judgments (3d ed.), section 66.

And in section 67 he says: " With the exception pointed out in the above section, a judgment entered *nunc pro tunc* must be everywhere received and enforced, in the same manner and to the same extent as though entered at the proper time. Though an execution may have issued, and proceedings under it culminated by the sale of property, when there was nothing on the record to support it, yet the omission was one of evidence and not of fact, and the evidence being supplied in a proper manner, full force and effect will be given to the fact as if the evidence had existed from the beginning."

This we regard as a correct statement of the law, and if the appellants are not within the exception, and have not in good faith acquired rights without notice of the rendition of any judgment, they are bound by the judgment as if correctly rendered and entered as of the former date. It is, therefore, important to inquire into the transaction and determine whether or not the appellants acquired any *bona fide* rights between the date of the judgment of March 10th, 1875, and the date of the correction, in January, 1883, for the plaintiffs herein are bound by the judgment, and their rights are to be determined the same as if said judgment had been properly entered and signed on March 10th, 1875, unless they have some superior or intervening equities in their behalf. The facts alleged show, and the court has adjudicated, that the plaintiff, in the case of the State, ex rel. Stewart, *v.*

Mendenhall et al., was entitled to a judgment for the amount for which it was rendered on March 10th, 1875, which was prior to the rendition of any of the judgments in favor of plaintiffs. Under the facts alleged, and in equity, these appellees were entitled to a prior judgment lien to the appellants, but by an omission in the entering and signing of the judgment it is contended they did not acquire a valid lien, and the court, on proper showing, restored their rights and entered their judgment of the proper date.

It appears from the facts averred that the judgments in favor of the appellants were rendered upon pre-existing obligations; their rights were fixed prior to the rendition of the judgments, and it does not appear that they were misled or that they parted with anything of value, or acquired any rights during the interval which elapsed between the date the judgment should have been properly entered and the making of the *nunc pro tunc* entry, except that they acquired a judgment lien; and the rule is, that the general lien of a judgment creditor upon lands of his debtor is subject to all equities existing against the lands of the judgment debtor in favor of third persons at the time of the recovery of the judgment. Parol trusts may be established, showing the apparent owner had no interest in the lands subject to the lien of a judgment, and a satisfaction of a judgment may be set aside against junior judgment lien holders; and the facts alleged show that the sale was to the appellees before the sale to the appellants of the real estate in question in this case. *Lapping* v. *Duffy,* 65 Ind. 229; *Wainwright* v. *Flanders,* 64 Ind. 306; *Travellers Ins. Co.* v. *Chappelow,* 83 Ind. 429; *Peck* v. *Williams,* 113 Ind. 256.

We do not think a judgment creditor can be said to have acquired any rights. *Herbert* v. *Mechanics, etc., Ass'n,* 90 Am. Dec. 601; *Thompson* v. *Rose,* 41 Am. Dec. 121.

And the appellants have no superior or intervening equities which prevent the *nunc pro tunc* entry of the judgment from operating against them, and their rights are to be meas-

ured and determined as if the judgment had been properly entered and signed as of the original date. The correction of the judgment placed the parties in the same attitude they would have been if the omission to enter up the record had not occurred.

But if this theory is incorrect, the conclusion is manifestly correct, for other reasons.

Judgments on bonds payable to the State bind the real estate of the debtor from the date of the commencement of the action, and the action upon the bond must be considered to have been commenced prior to March 10, 1875; and if the first judgment is illegal, or amounted to no judgment at all, of which appellants were bound to take notice, and the action was pending until judgment was rendered upon the motion in January, 1883, the lien would antedate the other judgment liens. *Fleenor* v. *Taggart*, 116 Ind. 189; *Deming* v. *State, ex rel.*, 23 Ind. 416.

Taking the view we have in regard to the *nunc pro tunc* entry, it is unnecessary to consider the force and effect of the judgment as entered prior to the correction, and this, in effect, disposes of the case; for, as the complaint shows, the appellees had a judgment lien, and the appellants were not entitled to a judgment against them quieting their title to the real estate; but as the question is presented as to the right to have execution issue on the judgment after the expiration of five years from the rendition thereof, we will pass upon it. The execution issued in 1883; section 674, R. S. 1881, was in force at that time, and it provides that "Writs of execution, as now used for the enforcement of judgments, are modified in conformity to this Act; and any party in whose favor judgment has been heretofore or shall hereafter be rendered may, at any time within ten years after the entry of judgment, proceed to enforce the same as provided in this Act."

Section 675 provides that after the expiration of ten years execution can only issue on leave of court. This statute re-

lates wholly to the remedy, and applies to the issuing of execution on all judgments, whether rendered before or after its enactment, and is clearly within legislative authority. *Flinn* v. *Parsons,* 60 Ind. 573; *Henderson* v. *State, ex rel.,* 58 Ind. 244; *Pierce* v. *Mills,* 21 Ind. 27.

Even if it had been necessary to have had leave of court to issue the execution, the execution having issued and sale made upon it without objection from the judgment debtor, it can not afterwards be questioned, and the sale made upon it would be valid and can not be questioned by other judgment creditors. *Jones* v. *Carnahan,* 63 Ind. 229; *Mavity* v. *Eastridge,* 67 Ind. 211; *Johnson* v. *Murray,* 112 Ind. 154; *Rose* v. *Ingram,* 98 Ind. 276; *Richey* v. *Merritt,* 108 Ind. 347; *Hollcraft* v. *Douglass,* 115 Ind. 139.

There is no force in the allegations in the complaint that the judgment defendant, Mendenhall, had personal property out of which the judgment might have been collected prior to December 31st, 1878. During that time there were no other judgments against Mendenhall, and no allegations even in the complaint that the relator, or plaintiff, in the action upon the bond had any knowledge of the appellants' claim, and a judgment creditor loses no rights by the mere failure to enforce the collection of his judgment. There is no error in the record.

Judgment affirmed, with costs.

MITCHELL, J., took no part in the decision of this case.

Filed Nov. 2, 1889.