GRADISON ET AL. *v.* THE OHIO OIL CO.;
DOTLICH ET AL. *v.* THE OHIO OIL CO.

[Nos. 29,583 and 29,618. Filed February 16, 1959.]

*Johnson & Weaver,* of Indianapolis, for appellants in Gradison case.

*Dann & Backer,* of Indianapolis, for appellants in the Dotlich case.

*Charles M. Wells, Thomas M. Scanlon, Barnes, Hickam, Pantzer & Boyd,* of counsel, all of Indianapolis, and *Joseph F. Diver,* of Terre Haute, for appellee.

ARTERBURN, J.—These two cases were consolidated for briefing and oral argument and are so treated in this opinion.

This is an action brought by the appellee against the appellants to condemn an easement for right of way across certain real estate owned by the appellants in Marion County, Indiana for a pipe line for the transportation of petroleum and petroleum products.

The appellee is an Ohio corporation. It was admitted to do business in Indiana in 1901. It transports petroleum products through its pipe lines from various shippers and consignees, including Socony, Sinclair,

Phillips, Rock Island and Standard of Indiana. The petroleum products originate outside Indiana and are delivered at points in Indiana.

The appellee operates as a common carrier under the jurisdiction of the Interstate Commerce Commission. Its original line ran from Wood River and East St. Louis, Illinois to Clermont, Indiana. The appellees desire to take land for an extension from Clermont to Speedway City. At Speedway City there is a connection with the line of the Buckeye Pipe Line Company which transports products east to Muncie, where some deliveries are made, and from that point there is transportation into the State of Ohio.

The issues were formed by appellee's complaint to condemn the easement across appellants' real estate and objections filed thereto by the appellants. The issue here raised and questioned is the right of the Ohio Oil Company, a foreign corporation, to condemn Indiana real estate for the construction of its proposed pipe line extension. The trial court decided all issues in favor of the Ohio Oil Company and entered a judgment appointing appraisers.

The appellants' position and argument is stated under two main points:

(1) "The condemnation statute does not authorize appellee to condemn Indiana real estate for the construction of its proposed pipe line" mainly for the reason that the general condemnation act of Indiana, under which the appellee brings its action, is not broad enough in scope to encompass the type and manner in which appellee conducts its business.

(2) "The Indiana General Corporation Act does not confer the benefits of the condemnation statute upon appellee" because it is a foreign corporation.

With these contentions are certain subsidiary points which we shall discuss as they arise.

The right of a foreign corporation to exercise the power of eminent domain is in derogation of the common law and can exist only by virtue of an affirmative grant of power. The power may be granted to certain domestic corporations and denied to like foreign corporations by a state. 23 Am. Jur., Foreign Corp., sec. 186, p. 172.

A pertinent part of the Eminent Domain Act of the State of Indiana reads as follows:

*"Appropriation and condemnation of lands and easements in lands by certain corporations.*—Any corporation organized under the law of the state of Indiana, authorized by its articles of incorporation to furnish, supply, transmit, transport or distribute electrical energy, gas, oil, petroleum, water, heat, steam, hydraulic power or communications by telegraph or telephone to the public or to any town or city, or to construct, maintain or operate turnpikes, toll bridges, canals, public landings, wharves, ferries, dams, aqueducts, street railways or interurban railways for the use of the public or for the use of any town or city, is hereby authorized and empowered to take, acquire, condemn and appropriate land, real estate or any interest therein, for carrying out such purposes and objects together with all accommodations, rights and privileges deemed necessary to accomplish the use for which the property is taken, including the right to construct railroad siding, switch or industrial tracks connecting its plant or plants or facilities with the tracks of any common carrier." Acts 1929, ch. 218, §1, p. 800, being §3-1713, Burns' 1946 Repl.

Since this statute relates solely to corporations organized under the laws of the State of Indiana, standing alone, it does not aid the appellee unless there are other statutes equalizing the position of foreign corporations with domestic corporations in this state.

The appellee in this endeavor cites a number of acts, some in force at the time it was admitted to do business in Indiana in 1901, and certain other statutes since enacted. We do not need to set them out here verbatim, since we do not feel they are helpful in the solution of the problem. One of these to which our attention is directed is Section 1 of Chapter 171 of the Acts of 1897, page 263, repealed by Acts 1929, ch. 215, §73. We point out that it is limited to corporations "organized under the laws of the State of Indiana." Some of the other statutes, although they include foreign corporations within their scope, do not therein propose to grant any additional powers or privileges to foreign corporations, but rather fix the duties and responsibilities of such corporations when authorized to do business in Indiana. The power of eminent domain is not mentioned therein. We relegate the following enactments on that basis. Acts 1901, ch. 265, §§1-2, p. 621, repealed by Acts 1907, ch. 176, §13; Acts 1907, ch. 176, §1, p. 286, repealed by Acts 1929, ch. 215, §73; Acts 1929, ch. 215, §74, p. 797, being §25-405, Burns' 1948 Repl.

These acts all seem to be negative in character, restricting and limiting foreign corporations to no greater powers than those of domestic corporations without positively granting any privileges to them. In construing the statutes we must keep in mind the principle that there must be some statutory authority for a foreign corporation to exercise the power of eminent domain, and, if granted, such powers must be strictly construed. *Indianapolis Oolitic St. Co.* v. *Alex. King St. Co.* (1934), 206 Ind. 412, 190 N. E. 57; 18 Am. Jur., Eminent Domain, Sec. 26, p. 650; Sutherland on Statutory Construction, Vol. 3, §6504, p. 249.

In examining the Indiana General Corporation Act of 1929, ch. 215, however, we find therein a section (Section 57—Burns' §25-302, 1948 Repl.) in the nature of an equalizing clause that puts foreign corporations on the same basis as domestic corporations. This section, after reciting certain exceptions not pertinent here, states:

"Except as hereinabove provided, a foreign corporation admitted to do business in this state shall have the same, but no greater, rights and privileges, and be subject to the same liabilities, restrictions, duties and penalties, now in force or hereafter imposed upon domestic corporations of like character, and to the same extent as if it had been organized under this act to transact the business for which its certificate of admission is issued."

It appears to us that it was the intention of the legislature under the Indiana General Corporation Act of 1929, in the above section to equalize foreign corporations admitted to do business in this state with domestic corporations "of like character, and to the same extent as if it had been organized under this act . . . ." Under this section a foreign corporation authorized to do business in this state could exercise the power of eminent domain if a like domestic corporation were given such privilege. Acts 1929, ch. 218, §1, p. 800, being §3-1713, Burns' 1946 Repl.

Section 67 (Burns' §25-312) further brings within the benefits of Section 57 (Burns' §25-302) foreign corporations authorized to do business in the state at the time the Indiana General Corporation Act becomes effective. It states:

"Foreign corporations entitled to transact business in this state at the time this act becomes effective (except banking, surety, trust, safe deposit, railroad, insurance and building and loan corporations), shall be entitled to all of the rights

and privileges, and shall be subject to all the limitations, restrictions, liabilities and duties, prescribed herein for foreign corporations admitted to transact business in this state under this act."

In 17 Fletcher Cyclopedia Corporations (Perm. Ed.), §8360, p. 186, it is said:

"When the statute of a state provides that, upon compliance with the law, the secretary of state shall issue a permit to a foreign corporation to do business in such state, and that 'such corporation shall have and enjoy all the rights and privileges conferred by the laws of this state on corporations organized under the laws of this state,' a foreign corporation which has secured from the state such a permit may exercise the right of eminent domain in the state, in all cases when corporations created under the laws of the state may exercise such power." (Citing various authorities)

*Howard* v. *Illinois, etc., R. Co.* (1907), 186 Ind. 88, 115 N. E. 50 involved a condemnation action by a foreign corporation. Section 3 of the Acts of 1861, ch. 78, p. 151 (Burns' §55-2203, 1951 Repl.) under which it purported to act provided that when a part of a railroad was located in Indiana and another part in another state and the same becomes vested in a corporation of such other state:

". . . said corporation may exercise and enjoy within this State . . . all the powers, rights, faculties, privileges, immunities and franchises enumerated in section second of this act, . . ."

Section second of the act (Burns' §55-2202, 1951 Repl.) provided:

"Such corporation shall possess all the powers, rights, privileges, immunities, faculties, and franchises in respect to the said railroad, . . . which were possessed or enjoyed by the corporation that owned or held the said railroad previous to such sale by virtue of its charter, or amendments there-

to, or other laws of this State, or of any State; not inconsistent with the laws of this State . . . ."

This act nowhere therein specifically mentioned the power of eminent domain. This court held nevertheless such foreign corporation could, under the above provisions, exercise such power.

In line with this case we must conclude that under the sections of the Indiana General Corporation Act above cited, certain foreign corporations admitted to do business in this state have the power of eminent domain.

Thus far we have considered only whether or not any foreign corporation could exercise the power of eminent domain under the Indiana Statutes. It remains to be determined, granting such statutory authority exists, whether or not the Ohio Oil Company is a corporation of the character entitled to exercise such power.

The power of eminent domain may not be exercised by a private business or corporation to take private property unless it is to be devoted to a public use or utility in which the business is engaged. We have said:

"A state or its agency may acquire property by eminent domain for a public use, or it may authorize a private individual to acquire such property, if it is to be dedicated to a public use and falls within the group of activities historically classified as a public calling or one affected with a public interest. Such businesses, although privately owned, are given the power of eminent domain, with the attendant obligation of serving the public without discrimination, and at a reasonable rate." *Foltz, Van Camp Hdw., etc.* v. *City of Indpls. et al.* (1955), 234 Ind. 656, 665, 130 N. E. 2d 650.

The appellants have never questioned the fact that the Ohio Oil Company is a pipe line common carrier and in their argument and briefs have agreed that the appellee should be so classified.

By judicial opinion in the Pipe Line Case the United States Supreme Court has held the Ohio Oil Company to be a common carrier. The appellee is subject to the tariff and other regulations of the Interstate Commerce Commission. *United States* v. *Ohio Oil Co.* (1914), 234 U. S. 548, 34 S. Ct. 956, 58 L. Ed. 1459; *Ohio Oil Co.* v. *Fowler* (1958), — Miss. —, 100 So. 2d 128; *Producers Transportation Co.* v. *Railroad Com.* (1920), 251 U. S. 228, 40 S. Ct. 131, 64 L. Ed. 239.

It seems to us, therefore, that the appellee, being a common carrier, is entitled to exercise the power of eminent domain in the State of Indiana if a like domestic corporation could do so.

The appellants say: "However, even if the appellee were an Indiana corporation it would still have no right to condemn under the statute." and point to the wording of the statute, and contend the appellee does not transport oil to the public or to any town or city. The pertinent part of the statute says an Indiana corporation may condemn property if it is authorized:

". . . to furnish, supply, transmit, transport or distribute electrical energy, gas, oil, petroleum, water, . . . *to the public or to any town or city,* or to construct, maintain or operate turnpikes, toll bridges, canals, public landings, wharves, ferries, dams, aqueducts, street railways or interurban railways for the use of the public . . ." (Our italics) Burns' §3-1713, 1946 Repl.

We do not think the change in the preposition used from "to" the public in the case of gas and oil, etc., to "for" the use of the public in the case of roads and the like is entitled to the emphasis urged. A change from "to" to "for" was necessary in the sentence structure to make sense. No cases are cited for the strained construction, and we can find no reasonable basis for

the legislature intending any distinction to be made. The real test is whether or not the property sought to be taken will be devoted to a public use named in the statute, namely, "to furnish, supply, transport, or distribute . . . gas, oil, petroleum . . . ," whether it is "to" or "for" the public.

In considering an act authorizing condemnation proceeding by a company organized thereunder for the generation of electricity and the sale and transmission "to the public," we have said:

> "The mere fact that the plaintiff, a public utility corporation, had entered into lawful contracts with other public utility corporations by which it had leased to them portions or all of the output of electricity to be manufactured by its plant, did not affect its right to exercise the power of eminent domain. If it should try to avoid performance of its public duties, performance could be compelled by mandamus. And so long as those duties are performed, it is not material that the electricity manufactured by plaintiff at its plant may be distributed, sold and furnished to cities and towns and to the public generally through the agency of lessees, instead of directly." *Lowe* v. *Indiana, etc., Power Co.* (1926), 197 Ind. 430, 440, 151 N. E. 220.

The United States Supreme Court, in holding the Ohio Oil Company a common carrier in the Pipe Line Cases, said:

> ". . . They carry everybody's oil to market, although they compel outsiders to sell it before taking it into their pipes. The answer to their objection is not that they may give up the business, but that, as applied to them, the statute practically means no more than they must give up requiring a sale to themselves before carrying the oil that they now receive. . . ." *United States* v. *Ohio Oil Co.* (1914), 234 U. S. 548, 561, 34 S. Ct. 956, 58 L. Ed. 1459.

The evidence shows that the Ohio Oil Company no longer requires the "outsiders" first to sell their oil to

it before putting it in its lines. It is compelled to and does accept oil from any shippers. The evidence does show it takes oil in its lines consigned to persons and businesses other than itself. Such businesses or persons constitute part of the public. Whether a use is public does not depend upon the number using the utility, but rather whether the public has the right to use it without discrimination. The evidence shows the public has that right in this case. *Westport Stone Co.* v. *Thomas* (1911), 175 Ind. 319, 94 N. E. 406; *Foltz, Van Camp Hdw., etc.* v. *City of Indpls. et al.* (1955), 234 Ind. 656, 130 N. E. 2d 650; *United States* v. *Ohio Oil Co.* (Pipe Line Cases) (1914), 234 U. S. 548, 34 S. Ct. 956, 58 L. Ed. 1459.

A considerable portion of the briefs and argument on both sides in this case have been consumed in the discussion of the charter and amended charter provisions of the Ohio Oil Company and the certificates of the Secretary of State with reference to the admission of the appellee to do business in Indiana. The evidence shows in both the Gradison and Dotlich Cases that the Ohio Oil Company was admitted to do business in the State of Indiana in 1901. However, at that time, apparently it was not the practice to have the certificates of admission recite the charter powers of the foreign corporation or the nature of the business which it was authorized to transact in this state. We do not feel that this omission is of any particular importance because the nature of the appellee's business clearly appears from the evidence, the admission of the appellants, and the adjudication of the United States Supreme Court that it was engaged in conducting a business as a pipe line common carrier. Thus the character of its charter powers has been interpreted, fixed and

determined in this case. Even though the exact wording of the powers as set out in the original charter was put in evidence in the Gradison Case, that would not alter the interpretation by judicial opinion of the United States Supreme Court that the appellee was a common carrier, nor the admission of the appellants that such was the fact.

In the Dotlich Case the original certificate of admission in 1901 was introduced, while in the Gradison Case, a certificate of the Secretary of State that such a certificate of admission had been issued was introduced in the evidence. In the Dotlich Case (but not in the Gradison Case) an amended certificate to do business in the State of Indiana was issued after the filing of the case. It was based upon the amendment of the articles of incorporation of the Ohio Oil Company in 1956. In the Gradison Case the evidence showed that amendments to the articles of incorporation in 1956 had previously been filed in the office of the Secretary of State of Indiana, but there was no evidence that any amended certificate to do business was issued as a result thereof. No objections were made to the introduction of any of these certificates at the trial.

For all of these reasons we feel there is ample proof of the nature and character of the business of the appellee insofar as we are concerned with it in this case, namely, that of a pipe line common carrier, and that it was authorized generally to transact its business in the State of Indiana by a certificate issued in 1901. *Smith* v. *Cleveland, etc. R. Co.* (1907), 170 Ind. 382, 81 N. E. 501; *Joint County Park Bd.* v. *Stegemoller* (1949), 228 Ind. 103, 88 N. E. 2d 686, 89 N. E. 2d 720.

Appellants, however, urge upon us that Section 63 of the Indiana General Corporation Act (Burns' §25-

308) prevents the Ohio Oil Company from exercising any additional powers as a result of the amendment of its articles of incorporation until the amendments have been filed with the Secretary of State of this state and an amended certificate to do business has been issued by such official.

We grant that this section does provide that no amendment to the articles of incorporation shall enlarge the character of the business which the foreign corporation is authorized to transact in this state until such amendment is filed with the Secretary of State and an amended certificate of admission issued. However, from what has been said, it is evident that the appellee, under its original charter powers and the certificate of admission issued in 1901, had the authority to and was acting as a pipe line common carrier. This was true before it ever attempted to amend its charter in 1956. Hence the amendments, insofar as the character of the business as a common carrier is concerned, were not "enlarged or altered." We are not concerned here with any other phase of the appellee's business, but only that under which it claims the rights and privilege to exercise the power of eminent domain as a common carrier.

Finally, appellants argue that Section 67 of the Indiana General Corporation Act (Burns' §25-312) is unconstitutional because it takes away rights of foreign corporations in excess of those of domestic corporations. There is no showing that appellee had any such excess powers. The question is moot so far as this case is concerned. We further note that no constitutional question of this character was raised in the trial court by any of the objections made to the proceedings.

The judgment of the trial court is affirmed.

Landis, C. J. and Achor, Bobbitt and Jackson, JJ., concur.

NOTE.—Reported in 156 N. E. 2d 80.