INDIANAPOLIS POWER & LIGHT COMPANY *v.* FREDERICK EUGENE BARNARD, a/k/a FREDRICK EUGENE BARNARD AND EUGENE BARNARD AND JANE BARNARD a/k/a LORA J. BARNARD, HUSBAND AND WIFE, MARSHALL MILHON AND JANET MILHON, HUSBAND AND WIFE.

[No. 1-1276A241. Filed January 19, 1978.]

*Marcus E. Woods, Clark L. Snyder*, of Indianapolis, *John D. Noland*, of Indianapolis, *Barnes, Hickam, Pantzer & Boyd*, of counsel, of Indianapolis, for appellant.

*William G. Bray*, of Martinsville, *Frank E. Spencer*, of Indianapolis, *Robert D. St. Clair*, of Martinsville, for appellees.

HOFFMAN, J.—Petitioner-appellant Indianapolis Power & Light Company (IPALCO) brought this action against defendants-appellees Fredrick Eugene Barnard and Lora Jane Barnard, husband and wife, and Marshall Milhon and Janet Milhon, husband and wife, to condemn a right-of-way across their land for electrical transmission lines.

IPALCO's complaint alleged *inter alia* that it is an Indiana corporation engaged in the business of generating and selling electricity to consumers in the Indianapolis area and as such has statutory authority as a public utility to exercise powers of eminent domain in the acquisition of real property interests. It

further alleged that it is necessary for IPALCO to construct a new high voltage transmission line from its Petersburg Generating Plant in Pike County, Indiana, to its Hanna Substation in Marion County, Indiana, and that the appellees own certain described real estate which is in the path of the proposed line thereby necessitating IPALCO's condemnation for the right-of-way.

The Milhons as leaseholders in the described real estate filed their objections as provided for by IC 1971, 34-11-1-5 (Burns Code Ed.[1]), asserting that the purpose for which the easement was sought was precluded by the land's prior public use as an airfield. After hearing evidence, the trial court entered its judgment and findings of fact which included the following:

> "[T]he Defendants were operating a public general use airport in the vicinity of the land which the Petitioner sought to condemn and due to the presence of such airport, the erection of transmission lines would violate the so-called High Structures Act (IC 8-21-7) if a permit were not obtained from the State Aeronautics Commission pursuant to such law. According to the evidence presented herein the Petitioner has not yet received such authority.

> "The Court further finds that the utility lacks such authority and the Petitioner could not use such land sought to be condemned for the purpose for which the land is being sought and which would authorize the Petitioner to obtain an order of appropriation as prayed for in such petition.

> "The Court further finds the Petitioner could not lawfully use the land sought to be condemned for the purpose set forth in their petition and that the Petitioner further lacks statutory grounds to condemn such land and obtain an order of appropriation as prayed for in their petition."

From the foregoing judgment IPALCO perfected this appeal contending contrary to the trial court's findings that it was invested with the statutory authority to condemn the right-of-way and that it could use the land sought for the purpose alleged in its

---

1. *See*, IC 1971, 32-11-1-1, *et seq.* (Burns Code Ed.), p. 627, Property — Eminent Domain, wherein IC 1971, 34-11-1-5 (Burns Code Ed.), appears and is denominated "Procedures."

complaint. IPALCO asserts that it comes within the status required by IC 1971, 32-11-1-1 (Burns Code Ed.), and has made an appropriate determination of necessity under IC 1971, 32-11-1-2 (Burns Code Ed.).

Appellees' response is that the findings of the trial court are general and that there is no "error" involved concerning an "order or ruling." It is argued instead that on an appeal from a negative judgment, the sole issue concerns whether the judgment was clearly erroneous as being unsupported by the evidence.

However appellees' attempt to circumscribe the issues on appeal to a general consideration of the evidence obscures questions of law properly preserved by IPALCO. Under Indiana Rules of Procedure, Trial Rule 52(D), the general finding or judgment controls as to matters not covered by specific findings. Those issues which are covered by specific findings however can be considered in the context of the trial court's conclusions of law based thereon. *Sekerez v. Bd. of Sanitary Comm'rs. et al.* (1974), 160 Ind. App. 13, 312 N.E.2d 98 (transfer denied). Moreover, whether the findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment and will only be accepted if they are supported by evidence of probative value. *In Re Marriage of Miles* (1977), 173 Ind. App. 5, 362 N.E.2d 171 (transfer denied). *See, Miller, etc. v. Ortman, etc., et al.* (1956), 235 Ind. 641, 136 N.E.2d 17. Accordingly the first issue is whether IPALCO has the statutory authority to condemn the right-of-way in question.

IC 1971, 32-11-3-1 (Burns Code Ed.), provides for the legislative delegation of the power of eminent domain to certain corporations operating in the public interest. It states in pertinent part:

"Any corporation organized under the law of the state of Indiana, authorized by its articles of incorporation to furnish, supply, transmit, transport or distribute electrical energy, * * * for the use of the public or for the use of any town or city, is hereby authorized and empowered to take, acquire, condemn and appropriate land, real estate or any interest therein, for carrying

out such purposes and objects together with all accommodations, rights and privileges deemed necessary to accomplish the use for which the property is taken, * * *."

Such demonstrates a legislative purpose that the power conferred be limited to the acquisition of real estate interests for the public purposes therein specified. Accordingly, the power to condemn land is a function of whether or not the property sought would be devoted to a public use which, in the case at bar, would be "to furnish, supply, transmit, transport or distribute electrical energy * * * ." IC 1971, 32-11-3-1, *supra; Gradison v. Ohio Oil Co.; Dotlich v. Ohio Oil Co.* (1959), 239 Ind. 218, 156 N.E.2d 80.

Furthermore, IC 1971, 32-11-3-2, *supra*, vests discretion in the utility to determine what property to condemn providing:

"The condemnor may take, acquire, condemn and appropriate a fee simple estate, title and interest in such quantity or amount of land as it deems necessary for its proper uses and purposes, except that for rights-of-way, the condemnor shall take, acquire, condemn and appropriate an easement."

Together these statute authorize a public utility to condemn real property interests in such quantity and amount as deemed necessary. *Ellis v. Public Service Company of Indiana* (1976), 168 Ind. App. 269, 342 N.E.2d 921. Thus, if in its judgment the property sought to be appropriated is necessary for distributing electric energy, the utility has the right to condemn it as a public use. *Dahl et ux. et al. v. Northern Ind. Pub. Serv. Co.* (1959), 239 Ind. 405, 157 N.E.2d 194.

Significantly the courts are not to infringe upon the administrative act of determining the necessity or reasonableness of the decision to appropriate and take land. Rather they are only to determine whether there is legislatively delegated legal authority which would allow the exercise of the power of eminent domain to acquire the land. *The Cemetary Co. v. Warren Sch. Twp. et al.* (1957), 236 Ind. 171, 139 N.E.2d 538. Moreover the condemning authority's exercise of its power may not be prevented unless a clear abuse of discretion is shown. *Guerrettaz v. Public Service Co. of Ind.* (1949), 227 Ind. 556, 87 N.E.2d 721.

In the case at bar the parties stipulated that IPALCO is a corporation lawfully doing utility business in Indiana. Testimony revealed that IPALCO operates generating plants, transmission lines and other facilities for providing electricity to the public. In its complaint IPALCO alleged, and a witness for IPALCO testified, that towers and transmission lines would be placed on the land sought and that an offer to purchase the right-of-way from the landowners was previously made. No contrary evidence was introduced concerning IPALCO's statutory authority to exercise the power of eminent domain under IC 1971, 32-11-3-1, *supra*.

In addition the uncontradicted evidence in the case at bar disclosed a present necessity for the condemnation based upon growing demand in the IPALCO system. A new generating station at the Petersburg Plant was constructed to increase capacity and it required an additional transmission line to the Hanna Substation in Marion County. The path of the new line was parallel to an existing corridor following the shortest route from IPALCO's Pritchard Plant near Martinsville, Indiana, and was not more than 85 feet to the south the the existing line on the property sought to be condemned. Such circumstances demonstrated the immediate necessity of the take, *Shedd v. Northern Indiana Public Service Co.* (1934), 206 Ind. 35, 188 N.E. 322, and disclose no arbitrary or fraudulent means in selection of the route. *Guerrettaz v. Public Service Co. of Ind., supra*.

Therefore, IPALCO's general allegation as to the use which it intends to make of the property interest sought, *Vandalia Coal Co. v. Indianapolis, etc. R. Co.* (1907), 168 Ind. 144, 79 N.E. 1082, and its general allegation of the necessity of the condemnation for such use, *Eckart v. Fort Wayne, etc., Traction Co.* (1914), 181 Ind. 352, 104 N.E. 762, are sufficient. There is no basis in the record for a finding that IPALCO lacked the statutory grounds to condemn the transmission line easement across the property of the appellees herein.

The focus of consideration therefore turns to whether Milhons' amended objections provide any additional proper basis upon

which the trial court could deny an order of appropriation. The appellees make two arguments, one relating to whether a contingency can preclude the public necessity designated as reason for the condemnation and the other concerning whether there was a demonstrated prior public use for the land sought.

As to the first, appellees note that IPALCO had applied for a permit as prescribed by the High Structures Safety Act, IC 1971, 8-21-7-1 *et seq.* (Burns Code Ed.), and that the Aeronautics Commission had not yet ruled on the application. On this basis Milhons argue that until IPALCO receives the permit of approval and has complied with all of the regulations pertaining to the ultimate use for which the land is sought then a contingency exists which precludes a present necessity for the condemnation. The Milhons refer to *Meyer v. NIPSCO* (1970), 254 Ind. 112, 258 N.E.2d 57, wherein a utility company could take only a 150-foot right-of-way rather than a 200-foot right-of-way because the evidence revealed an immediate need for only 150 feet, the remainder being acknowledged as required on a future speculation.

However reliance on *Meyer* in this context is inappropriate since it is not addressed to whether intervening contingencies concerning restrictions on the use of the land sought to be condemned, stand as barriers to the right to exercise the power of eminent domain by a utility. *Meyer v. NIPSCO, supra.*

The proper test of necessity correctly concerns whether the property sought will be devoted to an immediate public use. *Gradison v. Ohio Oil Co.; Dotlich v. Ohio Oil Co., supra,* (1959), 239 Ind. 218, 156 N.E.2d 80. That public use must then conform to appropriate legal restrictions but not necessarily to regulations which may have been pertinent only to the prior private use of the land. Thus, the showing of a necessity for condemnation does not require proof that no subsequent contingencies will arise during the execution of the project such as might theoretically defeat the use of the land as originally contemplated.

In this context it has been held as a general rule that the propriety of a taking of property by eminent domain is not defeated

by the fact that the purpose for which the property is taken is a use prohibited by zoning regulations. *Seward County Bd. of Com'rs. v. City of Seward* (1976), 196 Neb. 266, 242 N.W.2d 849; 101 C.J.S., *Zoning*, § 137, at 896. Furthermore, in the recent case of *Chambers v. Public Service Company of Indiana* (1976), 265 Ind. 336, 355 N.E.2d 781, wherein approval by several authorities was required before a nuclear generating station could be constructed, our Supreme Court held that it was not necessary for the utility to obtain permits from the Federal agencies involved prior to condemning the land. It stated, in addition, that prior approval by a governmental authority is not necessary to land acquisition by eminent domain. Therefore, it must be concluded that IPALCO did not need a permit from the Aeronautics Commission as alleged before it could exercise its power of eminent domain. Sustaining Milhons' objection based thereon was error.

In their second objection appellees alleged that their airport was certified as a public airport by the Aeronautics Commission of Indiana and that IPALCO's intent to erect towers up to 148 feet high was not compatible with the use of the land as an airport. The resulting issue raised in IPALCO's appeal concerns whether the airfield operated by the landowners was a prior public use of real estate such as would have priority over the public use contemplated in its eminent domain proceeding.

IPALCO draws attention to a separate action on July 28, 1976, in which the Marion Circuit Court found that the airfield was not in public use and set aside the Aeronautics Commission's certification. IPALCO asserts the judgment of the Marion Circuit Court as a prior adjudication of the same fact in controversy as in the instant case. It claims that such former judgment is binding for the landowners and estops them from contesting the fact anew herein.

Generally "estoppel by verdict or finding" applies, though the causes of action are not the same, if the fact or question has been adjudicated in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties. *Town of Flora v. Indiana Service Corp.*

(1944), 222 Ind. 253, 53 N.E.2d 161. Our Supreme Court in *Flora*, at 257 of 222 Ind. at 163 of 53 N.E.2d, noted:

"In such cases the former adjudication of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the latter suit, regardless of the identity of the causes of action, or the lack of it, in the two suits."

In the case at bar an official copy of the record of the findings of fact, conclusions of law and judgment of the Marion Circuit Court were made a part of the record as supplemental evidence in the trial court. This judgment should have been considered binding as to its conclusion concerning the public certification of the Milhons' airstrip at the time it was rendered.

In addition it is clear that while the airfield may have been considered public by the Commission at the time of the hearing it was not so described on August 29, 1975, when IPALCO filed its complaint to condemn the right-of-way for transmission lines. Notice of IPALCO's proposed transmission line was given to the Aeronautics Commission in early 1975, and then to the parties by the filing of its complaint to condemn on August 29, 1975. Testimony by the aviation inspector for the Aeronautics Commission, Irvin Schnuck, disclosed that the airfield in question was considered private as of March 17, 1975, and while it had been inspected as of August 29, 1975, it had not at that time been certified as a public airstrip or as an airstrip open to the public. Thus it was the filing of the condemnation action which created a prior and existing right of the public to use the real estate for a high voltage transmission line and not the inspection of the airfield.

It must be concluded therefore that the objections taken by the appellees-landowners have not been shown to be supported by the evidence or the law. IPALCO is a public utility authorized to appropriate and condemn land for the use of the public in transmitting electricity pursuant to IC 1971, 32-11-3-1, *supra.* IPALCO made proposals to purchase the right-of-way for two appraised amounts to the parties involved, one over $3,000 and the other over $4,000, which resulted in a total offer of $7,000, in accordance with IC 1971, 32-11-1-1, *supra. See, Wampler v. Trustees of Indiana University* (1961), 241 Ind. 449, 172 N.E.2d 67. In

addition, the complaint for condemnation followed the procedural requirements of IC 1971, 32-11-1-2, *supra*, and was filed on August 29, 1975, before any prior public use of the land was made including the certification by the Aeronautics Commission on November 20, 1975. Since the necessity for a public use was clearly demonstrated, authority for the condemnation was properly exercised.

The sustaining of the landowners' objections under such circumstances is contrary to law. The judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Garrard, J. concurs.

Buchanan, J., participating by designation, concurs.

NOTE—Reported at 371 N.E.2d 408.