518 N.E.2d 482 (1987)
In the matter of Adult Protective Services for Ancil Hartman.
Ancil Hartman, Respondent-Appellant,
v.
STATE OF INDIANA, Petitioner-Appellee.
No. 73A01-8609-CV-00259.
Court of Appeals of Indiana, First District.
May 26, 1987.
Publication Ordered January 20, 1988.
Frank E. Spencer, Indianapolis, for respondent-appellant.
Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for petitioner-appellee.
NEAL, Judge.

STATEMENT OF THE CASE
Respondent-appellant, Ancil Hartman (Hartman), was found to be an endangered adult, as defined in IND. CODE 4-27-7-2, by the Shelby Circuit Court from which judgment he appeals.
We affirm.

STATEMENT OF THE FACTS
On March 7, 1986, the Prosecuting Attorney of Shelby County filed a Petition for Protective Services for Hartman alleging that, after an investigation by the Adult Protective Services Unit, Hartman was an endangered adult as defined by IND. CODE 4-27-7-2 by reason of his advanced age, and because he was harmed or was threatened with harm as a result of neglect *483 and exploitation of his property. A hearing was set for March 21, 1986, notice was given, and, with Hartman present with counsel, the hearing was conducted on that date.
The uncontradicted evidence is as follows: Hartman is 85 years of age and is beset with medical and physical difficulties. As a result of diabetes of long standing, his left leg and right middle toe have been amputated. He has had retinal hemorrhage with resulting damage and, despite a lens transplant and a cataract operation, is nearly blind. He has acute myocardial infarction and congestive heart failure. He suffers from renal insufficiency, and he has had an appendectomy and a cholecystectomy. On occasions he suffers from abdominal pain, and is often confused and lethargic. He has been hospitalized many times, once for 83 consecutive days. He was married to his present wife, Peggy, age 47, on August 17, 1985, who then left him after six weeks. He lived alone until the Monday prior to the hearing at which time she reconciled with him. He lived alone in a residence the hygienic qualities of which were described by a public health nurse as "absolutely awful". Record at 159. Neighbors looked after him and called an ambulance for him at least 25 times over a three-year period. Having no telephone, Hartman signaled emergencies by turning on the porch light. He tried on occasion to drive but should not. He does not take his medicine or eat right, and has no one to prepare his diabetic diet. Three children live away and cannot care for him on a daily basis. He is stubborn and will agree to nothing. There is evidence that his wife has taken advantage of him financially.
At the close of the evidence the trial court, in the presence of the parties and on the record, announced its judgment. It found that Hartman was an endangered adult as defined by the statute by reason of infirm health and advanced age. As affects the issues here, it found:
"[T]hat the Respondent is unable or lacks the capacity to make the determination to provide or give consent to be receptive to Protective Services, conclude that ... that Mr. Hartman has reached this stage as a result of neglect and as a result of exploitation of his property. The evidence is ... is significantly available to conclude that Mrs. Hartman has taken advantage of the situation and has created some conditions that are tremendously adverse to Mr. Hartman, and by her testimony and the evidence that ... has been presented to me that ... I'm able to conclude that she is not capable of providing the care and attention that Mr. Hartman needs and requires." (Our emphasis.)
Record at 144.
The trial court found that a protective order should issue and outlined the terms thereof, which are not at issue here on appeal. At the conclusion of the recital of its judgment the trial court requested the prosecuting attorney to prepare an entry. A written entry, signed by the trial court and entered on the record on the same day, reiterated the judgment announced in trial court except that portion quoted above concerning Hartman's capacity to consent, which was omitted, and the order did not specifically find that, by reason of infirm health and advanced age, Hartman was incapable of either managing his property or caring for himself, or both. The order, as relevant here, reads as follows:
"ORDER
The Court finds that Respondent, Ancil Hartman, is an endangered adult as defined by IC 4-27-7-2 by reason of infirm health and advanced age, and that Respondent has been harmed and threatened with harm as a result of neglect and exploitation of his property.
The Court, therefore, determines that a Protective Order shall issue and the objectives of said Protective Order are that Respondent be given the appropriate medical and residential care... ."
Record at 10.

ISSUES
The two issues, as stated by Hartman, are as follows:

*484 I. Whether or not, in this special statutory action, Hartman was required to bring his case within the statute by establishing, and the trial court finding, that Hartman was incapable by reason of "infirm health and advanced age" of either managing his property or caring for himself, or both.
II. Whether or not, in this special statutory action, without the consent of Hartman, the trial court could require him to receive and pay for protective services without determining that he lacked the capacity to provide or consent to protective services.
We will discuss the two issues together.

DISCUSSION AND DECISION
IND. CODE 4-27-7-1 to -14 provides a statutory scheme to furnish protection for helpless adult persons whose conditions endanger their health, welfare, and property. The primary governmental agency responsible for the implementation of the program is the local welfare department. IND. CODE 4-27-7-3. It may contract with other qualified agencies, denominated as "Adult Protective Service Units" (APSU), which have powers to initiate investigative procedures and supervise protective programs. Upon making the determination that a person is an endangered adult, the APSU is directed by the statute to refer the matter to the appropriate law enforcement agency, namely the prosecuting attorney, who must initiate court action to secure an order for supervised care of the endangered adult. IND. CODE 4-27-7-11.
IND. CODE 4-27-7-2 defines an endangered adult:
"As used in this chapter, `endangered adult' means an individual who is eighteen (18) years of age or older and who:
(1) Is incapable by reason of insanity, mental illness, mental retardation, senility, habitual drunkenness, excessive use of drugs, old age, infirmity, or other incapacity, of either managing his property or caring for himself or both; and
(2) Is harmed or threatened with harm as a result of:
(A) neglect;
(B) battery; or
(C) exploitation of the individual's personal services or property."
(Emphasis added.)
IND. CODE 4-27-7-11, as relevant here, is as follows:
"(c) If an endangered adult does not consent to the receipt of protective services arranged by the department of the adult protective services unit or withdraws consent previously given, the endangered adult may be required to receive protective services only after the probate court having jurisdiction in the county in which the endangered adult resides determines in accordance with IC 29-1-18, that the endangered adult lacks the capacity to make that determination.

(d) At the hearing at which the probate court determines whether the endangered adult should be required to receive protective services, the endangered adult is entitled:
(1) To be represented by counsel; and
(2) To have the court appoint counsel for the endangered adult if the court determines the endangered adult is indigent.
(e) If, after the hearing, the court determines that the endangered adult should be required to receive protective services, the court shall issue a protective services order... ."
(Emphasis added.)
Hartman's argument is that the findings are deficient because there is no jurisdictional finding that the endangered adult "is incapable ... of either managing his property or caring for himself or both," as stated in the definition of endangered adult in IND. CODE 4-27-7-2. Hartman also argues that there is no finding that, since he did not consent, he lacked the capacity to make that determination as required by IND. CODE 4-27-7-11(c), and that a finding of incapacity is a precondition to the award of protective services. Hartman *485 correctly states that, as a general rule in a special statutory action, the claimant must bring himself within the provisions of the statute. Blade Corp. v. American Drywall, Inc. (1980), Ind. App., 400 N.E.2d 1183.
We first observe that under the uncontradicted evidence set forth in the Statement of Facts, no question exists but that Hartman is an endangered adult whose very existence and survival is precarious at best. The arguments here are merely technical, going to the form or completeness of the order book entry. The record does not reflect any request for findings of fact and conclusions of law, neither does the statute nor Ind. Rules of Procedure, Trial Rule 52 so require. Hartman, with counsel, was at the trial and heard the trial court announce the judgment which included the omissions of the prepared entry. Hartman does not contend he was prejudiced. We are of the opinion that Teperich v. North Judson-San Pierre High School Building Corp. (1971), 257 Ind. 516, 275 N.E.2d 814, cert. denied, 407 U.S. 921, 92 S.Ct. 2462, 32 L.Ed.2d 806, is controlling. In that case, where T.R. 52(A) required special findings of fact without a request in granting or refusing preliminary injunctions, the trial court made no special findings. The supreme court stated:
"However, we fail to see how this error was harmful or prejudicial to appellant. The facts in this case are relatively simple and are not in dispute. Thus it cannot be seriously contended that appellant has been uninformed as to what facts were determined or that she has been prejudiced by not being able to adequately prepare this appeal."
Id. at 520, 275 N.E.2d at 817.
Additionally, the trial court made a general finding that Hartman was an endangered adult as defined by IND. CODE 4-27-7-2. In IPALCO v. Barnard (1978), 175 Ind. App. 308, 371 N.E.2d 408, the court addressed T.R. 52(D). That rule, in part, states:
"[F]indings of fact with respect to issues upon which findings are not required shall be recognized as findings only upon the issues or matters covered thereby and the judgment or general finding, if any, shall control as to the other issues or matters which are not covered by such findings."
The court in IPALCO applied the rule to partial findings. It stated that whether the findings are adequate depends upon whether they disclose a valid basis under the issues for the legal result reached in the judgment and will be accepted if they are supported by evidence of probative value. McClamroch v. McClamroch (1985), Ind. App., 476 N.E.2d 514, trans. denied, held that when parties do not request special findings under T.R. 52, but the trial court voluntarily enters findings, this court considers the case as decided upon a general judgment supported by partial findings. Such judgment, the court stated, must be affirmed if sustainable upon any theory if such theory is not contrary to any of the findings.
It has been repeatedly held in Indiana that the rendition of the judgment is the announcement thereof by the trial court, and not the entry thereof on the record. The entry by the clerk is simply evidence of what has been done. Mayer v. Haggerty (1894), 138 Ind. 628, 38 N.E. 42; Chissom v. Barbour (1885), 100 Ind. 1; Reily v. Burton (1880), 71 Ind. 118; Anderson v. Mitchell (1877), 58 Ind. 592. In Bailer v. Dowd (1942), 219 Ind. 624, 40 N.E.2d 325, a case where the judgment was not signed, the supreme court upheld the validity thereof stating that the rendition of the judgment is a judicial act while the act of the clerk is ministerial. This case was followed in State v. Bridenhager (1971), 257 Ind. 544, 276 N.E.2d 843, where no order book entry had been made overruling a motion to correct error, an event critical to the running of the time for filing an appeal. The court said:
"Although, as contended by Defendant, a court speaks by its record, which is its order book, and the order book entries are not dependent for their stability or validity on outside memoranda; and for many purposes, a judgment, until entered, is not complete, perfect and effective until this is done; it, nevertheless, is *486 effective between the parties from the time of rendition.
`* * * rendition of the judgment is the act of the judge, judicial, but the entry thereof the act of the clerk, ministerial, and the judge's signature is likewise a ministerial attestation to the correctness of the clerk's transcription of a judgment complete in itself when pronounced by the judge. * * *.' (Emphasis ours)

Bailer v. Dowd (1942), 219 Ind. 624, 627, 40 N.E.2d 325, 326.
The absence of an order book entry is correctable by a nunc pro tunc entry, which, when made, takes effect as of the time of the original judgment. Chissom, et al. v. Barbour, et al. (1885), 100 Ind. 1; Leonard, et al. v. Broughton, et al. (1889), 120 Ind. 536, 22 N.E. 731."
Id. at 546-7, 276 N.E.2d at 844.
As stated in 17 I.L.E. Judgment Sec. 43, in the entry or record of a judgment, a clerical error, misdescription, irregularity, omission, or other defect not going to the jurisdiction of the court will not vitiate the judgment or give it an effect it would not have had if correctly entered.
In conclusion, Hartman has made no effort to interdict the operation of the above authorities, which support the judgment entered. We therefore affirm the action of the trial court.
Judgment affirmed.
RATLIFF, C.J., concurs in result.
STATON, J., concurs.