## VIRGIL E. BLAIZE AND INEZ BLAIZE *v.* PUBLIC SERVICE COMPANY OF INDIANA, INC.

[No. 1-373A61. Filed October 23, 1973. Rehearing denied November 28, 1973. Transfer denied March 1, 1974.]

*Donald G. Hendrickson,* of Boonville, *Charles R. Nixon, James G. McDonald, Jr., McDonald McDonald & Nixon,* of Princeton, for appellants.

*Carl M. Gray,* of Petersburg, *Frank T. Lewis,* of Plainfield, for appellee.

ROBERTSON, P.J.—The defendant-appellant (Blaize) filed objections to the plaintiff-appellee's (Public Service) complaint in condemnation. After a hearing, the trial court over-

ruled the objections and appointed appraisers. Blaize is appealing the trial court's interlocutory order pursuant to IC 34-11-1-5, Ind. Ann. Stat. § 3-1705 (Burns 1968).

Prior to a discussion on the merits, it should be noted that Blaize's motion to strike the appellee's brief is overruled. It has been held that appellees, under facts similar to this case, are entitled to thirty days for filing a brief instead of the ten days normally allowed when appealing an interlocutory order. See: *Stone et al.* v. *Public Service of Indiana, Inc.,* (1973), 157 Ind. App. 328, 300 N.E.2d 121; *Indiana Service Corp.* v. *Town of Flora* (1941), 218 Ind. 208, 31 N.E.2d 1015, and AP. 8.1 (A).

A summary of the six issues raised and argued in Blaize's overruled motion to correct errors are:

1. Public Service did not make a good faith effort to purchase the same property sought to be acquired;
2. There was no evidence of any necessity to justify the taking of 150 feet right-of-way.
3. Public Service's complaint did not sufficiently describe the property and property rights it sought to condemn;
4. Neither the complaint, the evidence, nor the court's judgment clearly defines what rights or privileges are taken by Public Service;
5. There was no evidence that Public Service was entitled to take all of the property described in the complaint; and
6. Public Service failed to prove the material allegations of its complaint.

The keystone of Blaize's argument on the first assignment of error is directed to the proposition that because there was a variance between property and property rights bargained for and those subsequently condemned there was no meeting of the minds between Blaize and Public Service. Blaize contends that a number of variances exist when a comparison is made between the original offer and the complaint filed. Examples include the alleged fact that Public Service's right-of-way agent did not specifically show Blaize

where the power line would cross his property, that the complaint in condemnation specified four towers on parcel 91, while the proposal was not specific on the matter; that the proposal specified certain rights of Public Service, such as ingress and egress, removal of endangering obstructions, etc., while the complaint was silent on these points; and a variance on the description on parcel 93.

The applicable law is stated in *Dzur* v. *Northern Indiana Public Service Company* (1972), 257 Ind. 674, 278 N.E.2d 563, quoting from *Indiana Service Corp.* v. *Town of Flora, supra:*

> " 'An effort to purchase the property sought to be acquired is a condition precedent to the right to maintain an action to condemn. Slider v. Indianapolis, etc., Traction Co., 1908, 42 Ind. App. 304, 85 N.E. 372, 721. There can be no compliance with this requirement unless the subject of negotiation is clear to both parties, since a meeting of the minds is essential to the existence of a valid contract. If a municipality makes an offer to acquire a particular property, or a specific part thereof, which offer is rejected by the owner of the utility, and if the municipality then undertakes to condemn other or different property than that which it has offered to purchase, it cannot be said that an effort was made to purchase that which it sought to condemn." ' 278 N.E.2d, at 566.

The meeting of the minds concept referred to in the *Dzur* and *Flora* cases, *supra*, refers to a mutual understanding identifying the property to be acquired. It is obvious that it cannot refer to a meeting of the minds as the concept is utilized in contract law, for if that were the case there would be no need for litigation in such matters. Additionally, a close reading of the *Dzur* and *Flora* cases, *supra*, leaves the distinct impression that the meeting of the minds concept applies to the physical property, and not necessarily upon any of the more incorporeal rights. We further note language in the *Flora* case to the effect that futile negotiations may not be required

at all if the condemnee indicates that he would not sell the whole or any part of his property.

Public Service's right-of-way agent testified:

"On January 26, 1972, I contacted Mr. Blaize, at this time with an option to buy an easement.

\* \* \*

And at this time displayed the strip maps, showed the aerial maps and he stated he had some misfortune he was resistent and suggested that we use another route, I left with him a blank easement and copy of the option. On February 28, 1972, I contacted Mr. Blaize again, seeking an option and at this time why he suggested we go across the South end of the parcel, there is an abandoned road in that area. Then the next call was June 16, 1972, at this time I had an easement on parcel 91, asked him for his signature on the easement, offered him a check for $2426.00, it was refused, sought survey on the line, survey permission and this was refused and again on June 26, 1972, talked to Mr. Blaize, asked for the same material and same easement and offered the same check, and then on August 4, 1972, I had both easements on parcel 91 and 93, told him that the property had been appraised, offered him a check again for $2426.00 for parcel 91 for his signature on that easement, on parcel 93 for his signature, $25.00. I contacted him again on August 14, 1972, talked with Mr. Blaize that time, offered him the same two checks for the two parcels and was again refused."

There was also evidence that on one of these visits the agent and Blaize viewed the property from a vantage point and the route was pointed out to Blaize. Additional testimony revealed that a final letter and proposal (construed by the trial court to be a final offer) which described the property to be taken and coincides with the material allegations of the complaint in condemnation, was sent to Blaize in early September, 1972. Mr. Blaize also testified:

"Well, I told them if they would go on the South side down there, which would be coming straight from their other line, that I would try to make some kind of deal with them, but they was going up within 25 foot of my barn and I wasn't for going."

We are of the opinion that the foregoing adequately represents both a bona fide effort to purchase the property by Public Service, as well as an understanding on the part of Blaize of where the right-of-way was to be located. While there were some differences in the Public Service's offers to Blaize, the trend over the period was towards the more specific. The import of the word "negotiations" lends itself to such a course of conduct.

An applicable observation is contained in *Wampler* v. *Trustees of Indiana University* (1961), 241 Ind. 449, 172 N.E. 2d 67:

"... Each case must be determined in light of its own particular circumstances. However, the authorities generally indicate that where there is disagreement regarding the value of property, if a reasonable offer is made honestly and in good faith and a reasonable effort has been made to induce the owner to accept it, the requirements of the statute for an offer to purchase have been met. ..." 241 Ind. at 456.

When it is considered that under some conditions a single offer by the condemnor is sufficient as a bona fide offer (see *Murray* v. *City of Richmond* (1971), 257 Ind. 548, 276 N.E.2d 519; *Dahl et ux, et al.* v. *Northern Ind. Pub. Serv. Co.* (1959), 239 Ind. 405, 157 N.E.2d 194) we are of the opinion that Public Service fulfilled its duty prior to litigation in this case.

Blaize next argues that there was no evidence to substantiate the necessity of a right of way 150 feet wide. A similar contention was raised in *Guerrettaz* v. *Public Service Co. of Ind.* (1949), 227 Ind. 556, 87 N.E.2d 721. The court held:

"The width of the strip of real estate to be taken, is a practical question, and to some extent depends upon what the condemnor deems necessary for the uses and purposes of its business. It is likewise a matter for the trial court to determine from all the evidence heard. Its finding should not be disturbed unless the record clearly shows that it is arbitrary and capricious. Indianapolis Water Co. v. Lux (1946), 224 Ind. 125, 64 N.E.2d 790." 227 Ind. at 562.

Also of equal applicability to the instant case, the court held:

> "While we will not attempt to weigh the evidence we can safely say there is nothing in the record indicating that the finding is arbitrary or capricious." 227 Ind. at 562.

Moreover, we believe the evidence and the reasonable inferences to be drawn therefrom substantiate the trial court on the 150 feet width.

Blaize's third assignment of error is directed to rhetorical paragraph 6 of the complaint in condemnation which erroneously alleges that the easement strip was to be 2873.5 feet long. The proposed line crossed parcel 91 for a distance of 2713.0 feet, however, the centerline did not cross parcel 93. That parcel was to be under the overhang created by the transmission line and was triangular in shape with the longest side being 160.5 feet long. Rhetorical paragraph 8 of the complaint, in pertinent part, alleges that the easement was to be 75 feet on either side of a center line followed by a description stating the course across parcel 91. The same paragraph continues by saying "also a strip of land which is more particularly described." There follows a metes and bounds description of the triangular portion of parcel 93. Exhibits attached to the complaint portrayed the parcels. At most it would appear that the erroneous length specified in rhetorical paragraph 6 could well be considered a scrivener's error, which would be overridden by the specific description contained in rhetorical paragraph 8.

> The description in the complaint is sufficient if it will enable one skilled in such matters to locate the land. *Hagemann et al.* v. *City of Mount Vernon et al.* (1958), 238 Ind. 613, 154 N.E.2d 33.

Blaize's fourth argument is directed to the uncertainty of the rights sought by Public Service because there was no evidence identifying the respective rights of the parties. Rhetorical paragraph 6 of the complaint in condemnation reads:

"6.  Plaintiff has made plans for the construction of said additional electric line, and the necessary poles, wires, anchors, guys and fixtures attached thereto, and has selected a proper and reasonable route for the same, and Plaintiff is now engaged in purchasing and acquiring the easement interests and rights deemed by Plaintiff to be necessary for the accomplishment of Plaintiff's plans for such construction in the various parcels of real estate located along said route.  In order to complete the construction of Plaintiff's said additional electric line, and the necessary poles, wires, anchors, guys and fixtures attached thereto, it is necessary that Plaintiff construct and thereafter operate, patrol and maintain, and, when and if required, reconstruct or remove, a portion of said additional electric line and such facilities over, along or across certain real estate of which the Defendants are in possession and claim to be the owners, said lands being located in the County of Pike, State of Indiana, being hereinafter more particularly described, being hereinafter sometime called 'Defendants' Real Estate', and being shown on Exhibit 'A' hereto attached and hereby made a part of this complaint by this reference thereto.  Plaintiff has endeavored to purchase from the owners of Defendants' Real estate the easement interest in a part of Defendants' Real Estate and the rights and privileges therein deemed by Plaintiff to be necessary to be secured by Plaintiff in order to enable Plaintiff lawfully and efficiently to construct, operate, patrol, maintain, reconstruct and remove such portion of said electric line and said facilities over, along or across Defendants' Real Estate, but Plaintiff has been unable to agree with Defendants for the purchase of such easement interest and said rights and privileges. Plaintiff is, therefore, required to, and does, exercise the right of eminent domain to appropriate and condemn for itself and its successors and assigns a perpetual easement interest and certain rights and privileges incidental to the proper constructon, operation, patrolling, maintaining, reconstructing and removing of an electric line, including necessary poles, wires, anchors, guys and fixtures attached thereto, for the transmission of electrical energy over, along and across a strip of land 150 feet in width and approximately 2,873.5 feet in length across Defendants' Real Estate (hereinafter sometimes called the 'Easement Strip' and hereinafter more particularly described in paragraph numbered 8 of this complaint) deemed by Plaintiff to be necessary in order to enable Plaintiff and its successors or assigns lawfully and efficiently to construct, operate, patrol,

maintain, reconstruct and remove over, along or across the Easement Strip and electric line, including necessary poles, wires, anchors, guys and fixtures attached thereto, for the transmission of electrical energy over, along or across a part of the lands of the Defendants, as hereinafter shown, together with the right and privilege to cut and trim all trees on or which overhang the Easement Strip and, also, the right and privilege to clear the Easement Strip of timber and brush and, the right and privilege to remove any other obstructions which in the judgment of Plaintiff, should be removed in order to prevent interference with the wires or appurtenances used in connection with said electric line; *provided, however,* that the only supporting structures that will be erected by Plaintiff and its successors or assigns on Defendants' Real Estate under the easement interest, rights and privileges appropriated and condemned herein in the Eastement Strip will be limited to not to exceed four (4) unguyed two-column structures and *provided, further,* that Defendants, after the appropriation and condemning of said easement interest and the rights and privileges hereby appropriated and condemned in the Easement Strip, shall have, and in this proceeding there may be expressly reserved to said Defendants, the use of said Easement Strip not inconsistent with the easement interest and rights and privileges herein and hereby appropriated and condemned."

There were no specific questions asked of a witness if these were the rights involved as Blaize correctly contends. However, we are of the opinion that the evidentiary basis for identifying these rights rested with the admission into evidence of Public Service's final offer to Blaize which were substantially similar in nature.

Blaize also argues that rhetorical paragraph 7 seeks to condemn the entire tract of 200 acres. We are of the opinion that this is not the case, because rhetorical paragraph 7 generally describes the Blaize property affected by the easement strip which is more specifically defined in rhetorical paragraph 8 of the complaint.

We perceive Blaize's final contention that Public Service failed to prove the material allegations of its complaint as being, in the main, a reiteration of the foregoing errors pre-

viously discussed and decided. Our review of the record indicates there was evidence, or reasonable inferences to be drawn therefrom, which would substantiate the trial court's judgment.

Two propositions not included in the foregoing regard the failure to negotiate with Mrs. Blaize and the failure to consider the coal underlying the Blaize property. In regard to the latter, the evidence was conflicting to some degree, but we are of the opinion that the trial court was correct in not requiring instructions regarding coal because of testimony by Public Service that it was not a factor to be considered. In regard to the former, we believe the offer to Mr. Blaize also constituted an offer to Mrs. Blaize. See: *Dahl et ux, et al.* v. *Northern Ind. Pub. Serv. Co., supra.*

Judgment affirmed.

Lowdermilk and Lybrook, J.J., concur.

NOTE.—Reported at 301 N.E.2d 863.