WYATT-ROUCH FARMS, INC. *v.* PUBLIC SERVICE COMPANY OF INDIANA, INC.

[No. 1-973A167. Filed May 29, 1974.]

*James G. McDonald, Jr., Charles R. Nixon, McDonald, McDonald & Nixon,* of Princeton, for appellant.

*Carl M. Gray,* of Petersburg, *Frank T. Lewis,* of Plainfield, for appellee.

LOWDERMILK, J.—Plaintiff-appellee commenced its action on June 15, 1973, in condemnation seeking to appropriate perpetual easement rights in and to a strip of land 150 feet in width upon a portion of appellant's real estate in Pike County, Indiana. Defendant-appellant was duly served with process and timely filed objections to the complaint. Hearing was had on the objections and the court overruled defendant's

objections, ordered the appropriation as set forth in plaintiff's complaint, set appeal bond and scheduled appointment and instruction of appraisers for a later date. Appraisers were appointed and instructed and filed their respective oaths on the day set and on said date defendant filed praecipe and eight days later filed its appeal bond.

Defendant-appellant filed its assignment of errors, consisting of twenty-one specifications.

In oral argument defendant-appellant forthrightly waived all but three issues set forth in the motion to correct errors, as all others had heretofore been determined by this court in prior appeals raising the same objections. These basic items remain in issue before this court and were presented in oral argument.

The first of the basic items argued by defendant-appellant was that the plaintiff-appellee failed in the proof of the allegations of its petition as to the allegations of ownership of the land in question. Specifically, it contended that all owners who held an interest in the described real estate had not been named, as the complaint had alleged that the named defendant "is all the owners, claimants, and holders of liens on that part of the real estate that is affected by this proceeding." The record shows that an oil and gas lease had been executed in 1957 on defendant-appellant's farm, including the strip being condemned. Defendant-appellant now complains that the plaintiff-appellee failed to make its case for the reason that the owner of the oil and gas lease was not named a party-defendant.

In answer to this, plaintiff-appellee contends that the allegations of its complaint are adequate and they are all that is necessary under the case law of this state. It further contends that there was no evidence on the part of the defendant-appellant that the oil and gas lease was still in full force and effect, as the same may have been released for non-drilling or for failure to produce and market oil for more than one year, pursuant to IC 1971, 32-5-8-1 (Burns Code Ed.)

Appellant shows to the court that the superintendent of land of the appellee corporation testified that he was aware at the time the law suit was filed of the fact that the real estate was subject to an outstanding oil and gas lease and therefore contends that the case of *Kosciusko Co. R.E.M.C., Inc.* v. *N.I.P.S.C.O.* (1967), 248 Ind. 482, 229 N.E.2d 811, is distinguishable from the case at bar and *Kosciusko* would not control in this instance.

Our Supreme Court in passing on the *Kosciusko* case referred, as it said, "With much pondering and reflection upon the sense and meaning of Burns' § 3-1702, its application and adaptation to other current statutes and decided cases, the purposes to be accomplished, and the protection of the rights of citizens, . . ." The court then determined the application of the statute as follows:

". . . we have arrived at the conclusion that a condemnor, in an action for condemnation, is required to name as defendants thereto only those parties whose interests and rights are deemed by it to interfere with and to be contrary to the purpose of the action and the adjudication sought."

Further, in *Kosciusko*, the court, at page 500, said:

". . . Consequently it follows further that the issue presented concerning whether Appellant's mortgagee is a necessary and indispensable party to invest the trial court with such jurisdiction must be answered in the negative."

*Kosciusko* further cited additional authorities on the failure to name all interested parties as not being a jurisdictional defect. Among them was, and we shall quote, 6 *Nichols, Eminent Domain*, 1965, § 26.1134, p. 208, which states:

" 'It is generally held that, when the condemnation of land is affected by judicial decree, failure to designate in the petition and to make a party respondent the owner of any interest in the land taken whose title appears of record or who is otherwise ascertainable on reasonable inquiry, renders the proceedings ineffectual to transfer such interest to the condemnor, but does not invalidate the entire proceedings or effect the va-

lidity of the taking of other interests, the owners of which were properly designated and made parties."

The plaintiff in bringing its action has some discretion and right to determine the parties whom he may wish to name as parties defendant. We, therefore, are of the opinion that it was within the right and discretion of plaintiff-appellee to name or not name the lessee of the oil and gas lease on the described real estate. The law is settled that no one's rights may be adversely affected if he is not a party to the litigation under the jurisdiction of the court and a judgment cannot be rendered against one not a party unless such party by representation or succession comes into the litigation or intervenes or is made a party.

The second item raised by defendant-appellant is that the trial court's order of appropriation is defective inasmuch as said order does not contain a legal description of the easement strip, but merely refers to the description as found in the complaint. Defendant-appellant relies on the case of *Hagemann* v. *City of Mt. Vernon* (1958), 238 Ind. 613, 154 N.E.2d 33, as authority for its position that a legal description is necessary in the court order.

A close examination of *Hagemann, supra,* discloses that that case involved a final judgment with damages, whereas in the case at bar, we are dealing only with an interlocutory order. IC 1971, 32-11-1-5 (Burns Code Edition) refers to the order of condemnation as an interlocutory order and does not provide for any requirement of a legal description of the appropriated property to be included in the order. The only requirement that a legal description of the property be included is in the final order of appropriation with damages.

It must be remembered that the interlocutory order is not a transfer of title or possession as such a transfer would not occur until after the appraisers' award is paid to the court and the legal description of the property is filed. Thus, it is our opinion that there is no error in the trial court's order.

The third item raised by defendant-appellant in this appeal is whether plaintiff-appellee negotiated in good faith when it sought to purchase the easement in question. Defendant-appellant contends that plaintiff-appellee did not make a bona fide effort to purchase the property inasmuch as the negotiations did not limit the number of structures to be placed on the property, while the complaint in the cause limited the number of structures to one. It is defendant-appellant's position that the number of structures was an important factor and that the difference between the negotiations and the complaint indicate that plaintiff-appellee was not making a good faith effort to purchase the property.

In the case of *Blaize* v. *Public Service Co. of Ind., Inc.* (1973), 158 Ind. App. 204, 301 N.E.2d 863, Judge Robertson held as follows:

> "The keystone of Blaize's argument on the first assignment of error is directed to the proposition that because there was a variance between property and property rights bargained for and those subsequently condemned there was no meeting of the minds between Blaize and Public Service. Blaize contends that a number of variances exist when a comparison is made between the original offer and the complaint filed. Examples include the alleged fact that Public Service's right-of-way agent did not specifically show Blaize where the power line would cross his property, *that the complaint in condemnation specified four towers on parcel 91, while the proposal was not specific on the matter;* that the proposal specified certain rights of Public Service, such as ingress and egress, removal of endangering obstructions, etc., while the complaint was silent on these points; and a variance on the description on parcel 93.
>
> The applicable law is stated in *Dzur* v. *Northern Indiana Public Service Company* (1972), [257 Ind. 674], 278 N.E.2d 563, quoting from *Indiana Service Corp.* v. *Town of Flora, supra:*
>
> ' "An effort to purchase the property sought to be acquired is a condition precedent to the right to maintain an action to condemn. *Slider* v. *Indianapolis, etc. Traction Co.,* 1908, 42 Ind. App. 304, 85 N.E. 372, 721. There can be no compliance with this requirement unless the subject of negotiation is clear to both parties, since a meeting of the minds is essential to the existence of a valid contract. . . ." '

The meeting of the minds concept referred to in the *Dzur* and *Flora* cases, *supra,* refers to a mutual understanding identifying the property to be acquired. It is obvious that it cannot refer to a meeting of the minds as the concept is utilized in contract law, for if that were the case there would be no need for litigation in such matters.

Additionally, a close reading of the *Dzur* and *Flora* cases, *supra,* leaves the distinct impression that *the meeting of the minds concept applies to the physical property, and not necessarily upon any of the more incorporeal rights. . . .*" (Our emphasis.)

In the case at bar there was no question as to what land was being discussed and defendant-appellant is complaining only about the number of structures to be placed upon the land. It is our opinion that the difference between the negotiations concerning the number of structures and the complaint does not indicate a lack of good faith negotiations on the part of plaintiff-appellee.

Defendant-appellant also urges that a lack of good faith negotiations is shown by the fact that the offers by Public Service were not based upon the values of alleged coal deposits underlying the property. There is evidence in the record that 61,456.92 tons of coal were removed from defendant-appellant's lands in the proximity of the easement strip, with the total value thereof being $19,811.73.

The appraiser employed by plaintiff-appellee based his appraisal on what he considered to be the highest and best use of the property, that being farming and hog raising. The record discloses that Mr. Sweeney's final valuation of the property was $1,025.00, while the final offer by plaintiff-appellee was in the amount of $1,137.00. Said offer was refused on more than one occasion with a counter-offer being made by defendant-appellant. The appraiser testified that he did not consider the value of any coal deposits underlying the strip, as he felt the value of the same was speculative and uncertain. However, plaintiff's Exhibit 4 which showed the negotiations between the parties did contain one specification

wherein plaintiff-appellee would have agreed to relocate its lines one time at its expense to allow the removal of any sub-surface minerals.

In the case of *Stone* v. *Public Service Co. of Ind., Inc.* (1973), 157 Ind. App. 328, 300 N.E.2d 121, 124, 125, this court discussed the matter of good faith negotiations and quoted our Supreme Court as follows:

"Our Supreme Court has stated, in the case of *Wampler* v. *Trustees of Indiana University* (1961), 241 Ind. 449, 456, 172 N.E.2d 67, 71, as follows:

'. . . Each case must be determined in light of its own particular circumstances. However, the authorities generally indicate that where there is disagreement regarding the value of property, if a reasonable offer is made honestly and in good faith and a reasonable effort has been made to induce the owner to accept it, the requirements of the statute for an offer to purchase have been met. . . .'

Justice Givan of our Supreme Court, in the case of *Murray* v. *City of Richmond* (1971), [257 Ind. 548], 276 N.E. 2d 519, 522, held:

'. . . In fact, it appears to be much more honest and forthright on the part of the condemning authority to come forth in their initial offer with the highest price they feel they could reasonably justify paying for the property. The fact that a property owner might place a higher value on his real estate and attempt to induce the condemning authority to pay a higher price does not bind the condemning authority to raise its figure.'

In the case at bar a reasonable offer was made to appellants and a disagreement as to the value of the easement property became apparent. Thus, it is our opinion that appellee satisfied its burden to make a good faith offer. . . ."

In *Blaize, supra,* a similar contention that alleged coal deposits had not been considered was raised and this court determined that since there was testimony by Public Service that it had not considered the underlying coal to be a factor, and there was conflicting testimony, that no error was committed in failing to consider the value of alleged coal deposits in the negotiations.

It must be remembered that this case is before us only on an interlocutory order of appropriation and not a final judgment with damages. An examination of the evidence, in our opinion, discloses that the offer by plaintiff-appellee was made in good faith. This is all that is required to satisfy the burden placed on plaintiff-appellee by statute to make good faith negotiations.

Finding no reversible error, judgment is affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 311 N.E.2d 441.