J. M. FOSTER COMPANY, INC. *v.* NORTHERN INDIANA.
PUBLIC SERVICE COMPANY, INC.

[No. 2-1173A146.  Filed April 30, 1975.]

*William H. Wagner, Chester, Clifford, Hoeppner & Houran,* of Valparaiso, for appellant.

*James J. Nagy, David C. Jensen, Schroer, Eichhorn & Morrow,* of Hammond, for appellee.

LOWDERMILK, J.—This action was commenced on May 22, 1973, by plaintiff-appellee Northern Indiana Public Service Company, Inc. (NIPSCO), filing its complaint against defendant-appellant J. M. Foster Company, Inc. (Foster), wherein NIPSCO sought to condemn a right-of-way over real estate owned by Foster. On June 11, 1973, Foster filed objections to the take. Both an amended complaint and amended objections to the take were subsequently filed. Following a hearing, the trial court, on October 15, 1973, entered an order overruling Foster's amended objections, appointing appraisers and condemning to the use of NIPSCO a right-of-way and easement in, upon, through and over the property owned by Foster. On October 23, 1973, Foster filed a motion to correct

errors. Such motion was subsequently overruled by the trial court. On December 14, 1973, Foster filed an assignment of errors in this court. The present appeal followed.

The evidence discloses that NIPSCO is a corporation organized under the laws of the State of Indiana for the purpose, among other things, of carrying on the general business of the manufacture, transmission, distribution, purchase and sale of electric current to towns and cities, and to the public in general. With existing generating facilities, NIPSCO is unable to meet the present demand for electrical energy at peak levels, and is required to purchase additional energy from surrounding utilities. In order to reduce its deficiency in generating capacity and lower the amount of purchased energy by 29%, NIPSCO is constructing a generating facility in Jasper County, Indiana, known as the R.M. Schahfer Station. The complaint filed by NIPSCO arose from its decision to construct two 345 KV electrical transmission lines which will extend northward from the Schahfer facility to substations located in Lake and Porter Counties. The line which is relevant to the present action will follow a route extending across a proposed residential development upon real estate owned by Foster before terminating at the Babcock substation northwest of the City of Valparaiso in Porter County. NIPSCO's present plans are to string a single circuit of four conductors on the south and west side of three 155-foot towers to be constructed upon the Foster property. The towers are to be spaced along a right-of-way 150 feet wide and 3,245 feet long.

Beginning on October 13, 1972, a series of meetings took place between representatives of NIPSCO and Foster with respect to the interests in land which NIPSCO sought to acquire. Foster proposed various alternate routes around and over its property which would minimize or do away with damage to its plans for a residential development. These alternatives were rejected by NIPSCO. On March 28, 1972, a letter was sent to Foster offering $28,808 for the acquisition. The offer was subsequently rejected by Foster and NIPSCO

commenced its action to condemn to its use a right-of-way and easement upon and across the Foster property.

Foster's argument on appeal centers around the overruling of its amended objections to the take. Inasmuch as Foster's assignment of errors presents questions in addition to those arising from its motion to correct errors, it becomes necessary to determine which is the proper procedural instrument in an appeal from the overruling of objections to a condemnation. In this regard, IC 1971, 34-11-1-5 (Burns Code Ed.), provides:

"Any defendant may object to such proceedings on the grounds that the court has no jurisdiction either of the subject-matter or of the person, or that the plaintiff has no right to exercise the power of eminent domain for the use sought, or for any other reason disclosed in the complaint or set up in such objections. Such objections shall be in writing, separately stated and numbered, and shall be filed not later than the first appearance of such defendant; and no pleadings other than the complaint and such statement or objections shall be allowed in such cause, except the answer provided for in section eight [32-11-1-8] of this act: Provided, That amendments to pleadings may be made upon leave of court. If any such objection shall be sustained, the plaintiff may amend his complaint or may appeal to the Supreme or Appellate Court [Court of Appeals] from such decision, as and in the manner that appeals are taken from final judgments in civil actions, of which appeal all the parties shall take notice and by which they shall be bound. But if such objections are overruled, the court or judge shall appoint appraisers as provided for in this act; *and from such interlocutory order overruling such objections and appointing appraisers, such defendants, or any of them, may appeal to the Supreme or Appellate Court [Court of Appeals] from such decision as and in the manner that appeals are taken from final judgments in civil actions,* upon filing with the clerk of such court a bond, with such penalty as the court or judge shall fix, with sufficient surety, payable to the plaintiff, conditioned for the diligent prosecution of such appeal and for the payment of the judgment and costs which may be affirmed and adjudged against the appellants, such appeal bond shall be filed within ten [10] days after the appointment of such appraisers. All the parties shall take notice of and be bound by such appeal. The transcript shall be filed in the office of

the clerk of the Supreme Court within thirty [30] days after the filing of the appeal bond. Such appeal shall not stay proceedings in such cause." (Our emphasis.)

It is our opinion that there is no question that an order overruling objections to a condemnation is an interlocutory order. See: IC 1971, 32-11-1-5 (Burns Code Ed.); *Wyatt-Rauch Farms, Inc.* v. *Public Serv. Co. of Ind., Inc.* (1974), 160 Ind. App. 228, 311 N.E.2d 441, 443. That the filing of an assignment of errors is the proper procedure in taking an appeal from such an order is confirmed by Ind. Rules of Procedure, Trial Rule 59(G), which provides, in pertinent part, that, "[*a*] *motion to correct errors shall not be required in the case of appeals from interlocutory orders,* orders appointing or refusing to appoint a receiver, and from orders in proceedings supplemental to execution." (Our emphasis.)

Furthermore, to conclude that a motion to correct errors, rather than an assignment of errors is a condition precedent to taking such an appeal would, under the provisions of IC 1971, 34-11-1-5, *supra,* require a defendant to file a transcript in this court twenty days before the filing of a motion to correct errors in the trial court would be required. Thus, the possibility would exist that the trial court could grant a defendant's motion to correct errors after an appeal would be required to be perfected. Issues might thereby be rendered moot by the trial court's action and defendants would be compelled to expend unnecessary time and funds.

We note, however, that by the terms of IC 1971, 34-11-1-5, *supra,* only an order overruling a defendant's objections to a condemnation order is an interlocutory order. A decision by the trial court sustaining objections by a defendant must be regarded as a final judgment following the entry of which the plaintiff-condemnor must file a motion to correct errors. See: Rule TR. 59(G), *supra; State* v. *Wood* (1942), 219 Ind. 424, 39 N.E.2d 448.

It should also be pointed out that once a transcript of proceedings is filed in this court the procedure to be followed

thereafter is, under IC 1971, 34-11-1-5, *supra,* to be governed by the rules applicable to appeals from final judgments. See: *Indiana Service Corp.* v. *Town of Flora* (1941), 218 Ind. 208, 31 N.E.2d 1015; *Blaize* v. *Public Service Company of Indiana, Inc.* (1973), 158 Ind. App. 204, 301 N.E.2d 863, 864.

## ISSUES

The first issue to be considered is whether in its effort to acquire the right-of-way over appellant's property, NIPSCO negotiated in good faith.

IC 1971, 32-11-1-1 (Burns Code Ed.), provides:

"Any person, corporation or other body having the right to exercise the power of eminent domain for any public use, under any statute, existing or hereafter passed, and desiring to exercise such power, shall do so only in the manner provided in this act [32-11-1-1—32-11-1-13], except as otherwise provided herein. Before proceedings to condemn, such person, corporation or other body may enter upon any land for the purpose of examining and surveying the property sought to be appropriated or right sought to be acquired; *and shall make an effort to purchase for the use intended such lands, right-of-way easement or other interest therein or other property or right. . . ."* (Our emphasis.)

In *Wampler* v. *Trustees of Indiana University* (1961), 241 Ind. 449, 466, 172 N.E.2d 67, 90 A.L.R.2d 204, 209, it is stated that:

"An effort to purchase the property sought to be acquired is a condition precedent to the right to maintain an action to condemn property pursuant to the Eminent Domain Act, and the burden is on the appellee here to show a good faith effort to purchase and an inability to agree. *Dahl et ux. et al.* v. *Northern Pub. Serv. Co., supra* (1959), 239 Ind. 405, 157 N.E.2d 194, 198, 199.

\* \* \*

What constitutes a 'good faith' or 'bona fide' offer to purchase? Each case must be determined in light of its own particular circumstances. However, the authorities generally indicate that where there is disagreement regarding the value of property, if

a reasonable offer is made honestly and in good faith and a reasonable effort has been made to induce the owner to accept it, the requirements of the statute for an offer to purchase have been met. 18 Am. Jur., Eminent Domain, § 319, p. 962; 29 C.J.S. Eminent Domain, § 224 (b), p. 1167."

See also: *City of Greenfield* v. *Hancock County Rural Elec. Membership Corp.* (1974), 160 Ind. App. 529, 312 N.E.2d 867; *Slider* v. *Indianapolis, etc., Traction Co.* (1908), 42 Ind. App. 304, 85 N.E. 721; Anno. 90 A.L.R.2d 211.

In support of its assertion that NIPSCO failed to negotiate in good faith, Foster contends that a representative of NIPSCO informed it of the possibility that five or six alternate routes across the property might exist and that it was suggested that Foster submit proposals as to alternate locations. It is further asserted that after three alternate routes were presented by Foster, NIPSCO refused to permit its engineers to meet with representatives of Foster, thereby making it impossible to ascertain whether a mutually acceptable route could be located. Foster contends that unless NIPSCO informed it as to what alternate routes were available, good faith negotiations were not possible. Appellants also rely upon *Wampler* v. *Trustees of Indiana University, supra,* for the proposition that NIPSCO, in refusing to permit further negotiation as to alternate routes, failed in its duty to make a reasonable effort to induce acceptance of its offer.

Appellant's reliance upon the *Wampler* case in this regard is misplaced. Therein, the question of whether a reasonable effort had been made to induce acceptance of the condemnor's offer centered around negotiations as to price, rather than the location of the particular property to be appropriated. While it is implicit in the concept of mutual understanding that the property sought to be appropriated should be adequately identified by the condemnor; *Wyatt-Rauch Farms, Inc.* v. *Public Serv. Co. of Indiana, supra* (1974), 311 N.E.2d 441; *Blaize* v. *Public Service Company of Indiana, supra* (1973), 301 N.E.2d 861; *Dzur; Corazzo; Country Estates* v. *Nipsco* (1972), 257 Ind.

674, 278 N.E.2d 563; the decision as to the location of the particular property sought or route to be taken rests within the discretion of the condemnor. See: IC 1971, 32-11-3-2 (Burns Code Ed.); *Guerrettaz* v. *Public Service Co. of Indiana* (1949), 227 Ind. 556, 561, 87 N.E.2d 721. It must be concluded, therefore, that NIPSCO was not required to enter into or continue negotiations with regard to alternative routes, but was only bound to conduct good faith negotiations incident to the property which it had chosen and to make a reasonable effort to induce acceptance of its offer relative thereto.

The next issue presented is whether the complaint was prematurely filed for the reason that NIPSCO did not file an environmental impact report with the Indiana Environmental Management Board pursuant to IC 1971, 13-7-16-4 (Burns Code Ed.), which provides as follows:

"Each agency, department and institution of the state shall report to the board any plans or activities which affect or may affect the environment of the state. The board shall review such reports and shall coordinate the programs of the various agencies and make recommendations as to the plans and activities of any such agency, department, or institution which affects the environment."

Appellant contends that whenever a public utility such as NIPSCO exercises the power of eminent domain, a power delegated by the Legislature, it acts as an agency of the State within the meaning of IC 1971, 13-7-16-4, *supra*. *State* v. *Pollitt* (1942), 220 Ind. 593, 600, 45 N.E.2d 480. Although appellant examines at length the delegation of legislative authority, see: IC 1971, 32-11-3-1 (Burns Code Ed.); IC 1971, 8-1-8-1 (Burns Code Ed.); *Dahl et ux., et al.* v. *Northern Ind. Pub. Serv. Co., supra* (1959), 239 Ind. 405, 157 N.E.2d 194, it does not devote any discussion to the more basic question of whether, assuming that a public utility is an "agency" within the terms of IC 1971, 13-7-16-4, *supra*, the filing of an environmental impact report with the Indiana Environmental Management Board is a prerequisite to the filing of a complaint for condemnation. In this regard, we must conclude in the negative.

While the condemnation of a fee simple or lesser interest in land by a public utility looks to the eventual use of such interest for a definite purpose which, in itself, may have a possible effect upon the environment, the ramifications of the construction which may follow are not of immediate import, save for the determination of necessity to be made within the discretion of the Legislature. The fulfillment of any duty which IC 1971, 13-7-16-4, *supra,* might arguably impose upon a public utility exercising the power of eminent domain cannot be regarded as a prerequisite to the filing of a complaint for condemnation where the order sought thereby could do no more than effect an eventual shift in title. Although action by the Environmental Board pursuant to the filing of an impact report might conceivably force an alteration of plans, such a consideration is, under existing authority, foreign to proceedings for condemnation and more properly the subject of an action brought under IC 1971, 13-6-1-1, *et seq.* (Burns Code Ed.), which governs environmental suits.

Appellant next asserts that NIPSCO was required to obtain from the Public Service Commission a certificate of public convenience, economy and necessity prior to the filing of its complaint. This question was decided adversely to the interests of appellant in *Graham Farms, Inc. et al.* v. *Indpls. Power & Light* (1968), 249 Ind. 498, 513, 233 N.E.2d 656; See also: *Reuter* v. *Milan Water Co., Inc.* (1935), 209 Ind. 240, 243, 198 N.E. 442.

The next issue to be considered is whether NIPSCO exceeded its authority in appropriating an interest in a portion of appellant's property for the purpose of increasing the reliability of its power transmission system.

Evidence introduced at the hearing indicated that NIPSCO intended the transmission line which would extend across Foster's property to serve as a "backup" for the other proposed transmission line which was to extend into Lake County. It was also disclosed that the "backup" line which would serve in the event of a temporary or extended outage due to maintenance, destruction or impairment of the other transmission

line, would be continuously energized and would transport electricity to be used throughout NIPSCO's system.

Appellant asserts that the condemnor is limited to the taking of land for the purpose of furnishing electrical energy to the public; that all of the electrical energy generated at the Schahfer station is to be furnished to the public via the line extending into Lake County; and that so long as such transmission line is operational, there is no necessity to utilize the line affecting appellant. Thus, Foster contends that if NIPSCO is permitted to construct an electrical transmission line for the sole purpose of furnishing systems reliability, rather than for the purpose of transmitting energy to a location where it will be consumed, it will have obtained an expanded power of eminent domain not intended by the Legislature.

IC 1971, 32-11-3-1, *supra*, provides, in pertinent part, that, "Any corporation under the law of the state of Indiana, authorized by its articles of incorporation to furnish, supply, transmit, transport or distribute electrical energy, . . . to the public or to any town or city, . . . is hereby authorized and empowered to take, acquire, condemn and appropriate land, real estate or any interest therein, for carrying out such purposes and objects together with all accommodations, rights and privileges deemed necessary to accomplish the use for which the property is taken, . . ."

In *Guerrettaz* v. *Public Service Co. of Ind., supra* (1949), 227 Ind. 556, at 561, 87 N.E.2d 721 at 724, it is stated that, "All questions concerning the expediency of taking private property for public use are exclusively for the legislature. Unless the action of the legislature is arbitrary, and the use for which the property is taken is clearly private, the courts will not interfere. *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 108, 155 N.E. 465."

Further, in *Dahl et ux. et al.* v. *Northern Ind. Pub. Serv. Co., supra* (1959), 239 Ind. 405, at 411-412, 157 N.E.2d 194, the court stated:

"The statute vests discretion in the appellee, utility, herein, to take or appropriate property for public use, and if in its judgment the property herein sought to be appropriated was necessary to distribute electric energy to the public, appellee had the right to condemn, and its judgment

therein cannot be questioned or superseded by the courts except for fraud, capriciousness or illegality. *Slentz et al.* v. *City of Fort Wayne et al., supra* (1954), 233 Ind. 226, 233, 118 N.E.2d 484. Rhyne, Municipal Law, Eminent Domain, § 17-6, p. 395." (Footnotes omitted.)

See: *Jensen* v. *I. & M. Elec.* (1972), 257 Ind. 599, 277 N.E. 2d 589; *State ex rel. Indiana Dept. of Conservation* v. *Barber* (1964), 246 Ind. 30, 200 N.E.2d 638; *Indianapolis Water Co.* v. *Lux* (1946), 224 Ind. 125, 64 N.E.2d 790.

Also, in *Jensen* v. *I. & M. Elec., supra,* at 603 of 257 Ind., at 591 of 277 N.E.2d, Justice Arterburn, speaking for our Supreme Court, stated that,

> "It is equally well established that the question of 'necessity' under the statute 'is not limited by a consideration of absolute or indispensable needs of the railroad' condemnor, and that 'necessary land' is that which is 'reasonably proper, suitable and useful for the purpose sought.' *Eckart et al.* v. *Ft. Wayne & N.I. Traction Co.* (1914), 181 Ind. 352, 104 N.E. 762; *Indianapolis Water Co.* v. *Lux, supra.* In determining what is 'necessary land,' courts 'may, and in proper cases should, consider not only the present needs of the company, but also those likely to arise in the future.' *Eckart* v. *Ft. Wayne & N.I. Traction Co., supra.*"

In *Jensen,* our Supreme Court was confronted with a question similar to that presented in the case at bar. Therein, an electric company had sought by a condemnation proceeding to acquire a strip of land across the appellant's property for the purpose of constructing an electrical transmission line. On appeal, the appellant asserted that "based on the testimony of appellee's one witness, the appellee failed to make a showing of any necessity since the evidence showed that I. & M. would have approximately 20% more kilowatts of electricity than it needs, six years in advance of the stated need." (Id.) The court held that such fact did not demonstrate a lack of necessity on the part of the condemnor. (Ibid. 257 Ind. at 603). In this determination, the court placed reliance upon the fact that necessity was amply shown by virtue of the condemnor-electric company's "need to protect against insufficient power during its

'peak' winter months to provide an ample supply of power in order to protect against a potential 'blackout' as occurred in New York City in the mid-sixties. *Protection against consequences which can result from an electrical 'blackout' constitute sufficient necessity to allow appropriation of land for the purpose of constructing facilities which will provide adequate protection.* The demands on the use of electricity in the future could never be estimated with total certainty and it would be foolish for this court to deny the right to prepare for the future when technical evidence shows that a failure to adequately provide could have an immobilizing effect on the area appellee is obligated to serve." (Our emphasis.)

"A large discretion is necessarily vested in those condemnors who are vested with the power in determining what property and how much is necessary; . . . and that the condemnor's exercise of such discretion will not be disturbed unless 'clear abuse' thereof has been shown." (Ibid at 257 Ind. 603).

It must, therefore, be concluded that appellee NIPSCO in the case at bar, did not, in appropriating appellant's property for the purpose of increasing the reliability of its system, exceed the authority delegated to it by the Legislature.

The final issue presented for review is whether sufficient necessity was shown for the taking of a right-of-way 150 feet in width across appellant's property.

Appellant contends that the order entered by the trial court on October 15, 1973, designating a right-of-way of 150 feet is not supported by any evidence and is consequently arbitrary and capricious. It is asserted that the only evidence as to the required right-of-way width consisted of the testimony of the general transmission and coordination engineer for NIPSCO, who stated that on either side of the centerline of the right-of-way, 26 feet was required for the longest tower armature, additional width of 17.82 feet were required for horizontal code clearance, and widths of 33 feet were needed for horizontal conductor swing clearance—a total of 76.82 feet on either side of the centerline. Appellant contends that such calculations assume that the conductors would be strung on

both sides of the towers, while present plans contemplate the placement of conductors on only one side of the towers.

The order entered by the trial court herein reads, in pertinent part, as follows:

"That in the course of the Plaintiff's business of furnishing, supplying, transmitting and distributing electrical energy *it has become necessary for Plaintiff to construct a single circuit 345 kv electrical transmission line system on double circuit towers,* in, upon, through and over certain real estate in Porter County, Indiana, described as follows, to-wit:

\* \* \*

That in order to construct said portion of said electrical transmission lines across said real estate, *it is necessary for plaintiff to acquire a right of way and easement* therein as herein after more particularly described;

\* \* \*

The General route, width and termini of said right of way and easement and the rights thereunto belonging, being as follows, to-wit:

A strip of land in Section 33, Township 35 North, Range 6 West of the Second Principal Meridian, in the County of Porter, State of Indiana, described as follows:

A strip of land situated in the South Half (S ½) of said Section 33, *said strip of land being 150 feet wide and lying 75 feet wide each side of centerline,* and said centerline produced, said centerline being described as follows:

\* \* \*"

(Our emphasis.)

In effect, the trial court found that a right-of-way 150 feet in width is necessary for the construction of a single circuit 345 kv transmission line. The record discloses that plaintiff's witness Ronald Lee Jacobs was asked under direct examination: "When you build a single circuit tower or double circuit tower you still need the double circuit right of way?" To this, the witness responded affirmatively.

The foregoing adequately supports the finding of the trial court and renders irrelevant appellant's further contention regarding a demonstration of necessity for the appropriation of property for an additional circuit to be installed in the future.

Finding no reversible error the judgment of the trial court is affirmed.

Robertson, C.J., and Lybrook, J., concurs.

NOTE.—Reported at 326 N.E.2d 584.