# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**RUDOLPH W. SAVICH**
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**DAVID L. STEINER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Sep 13 2012, 9:23 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL PATRICK KNOTT and
ANDREW JOHN KNOTT,

    Appellants-Defendants,

        vs.

STATE OF INDIANA,

    Appellee-Plaintiff.

)
)
)
)
)
)
)
)
)
)
)

No. 28A04-1203-PL-122

APPEAL FROM THE GREENE CIRCUIT COURT
The Honorable Erik C. Allen, Judge
Cause No. 28C01-1109-PL-123

**September 13, 2012**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

The State of Indiana filed a complaint, in eminent domain proceedings, to appropriate a parcel of land owned by Michael Patrick Knott and Andrew John Knott (together, "the Knotts") for the purpose of constructing a portion of Interstate 69 ("I-69") through Greene County, Indiana. The Knotts filed objections to the complaint, and after striking the Knotts' objections, the trial court issued an "Order of Appropriation and Appointment of Appraisers" ("Order of Appropriation"). *Appellant's App.* at 6. The Knotts raise the following issue on appeal, which we restate as whether the Order of Appropriation is capricious, fraudulent, or illegal because it fails to comply with federal environmental laws and regulations.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Knotts own 45 acres of real estate located in Section 16, Township 6 North, Range 4 West, Greene County, Indiana. *Appellant's Br.* at 2. On September 14, 2011, the State, on behalf of the Indiana Department of Transportation ("INDOT"), filed a Complaint for Appropriation of Real Estate ("Complaint") to acquire 11.236 acres of the Knotts' 45 acres of real estate for purposes of constructing a portion of I-69, referred to as a "limited access facility" ("I-69 Project"). *Id*. at 13, 18.

In Paragraphs I and II of its Complaint, the State explained that it was improving "I-69 under Project No. 0500446," and needed to "appropriate fee simple title and access rights to portions of the real estate owned by [the Knotts]," known as INDOT Parcel 17, Code 5531 ("Parcel 17"). *Appellant's App.* at 13. In Paragraph VI, the State averred that it had made an offer to the Knotts to purchase the property in question for $27,200, but that the parties had

not been able to agree on a purchase price. In Paragraph VII, the State described the subject property. The Complaint requested the appropriation of the described property and the appointment of disinterested appraisers to prepare a Report of Appraisers concerning the value of the property interests subject to eminent domain.

The Knotts filed "Objections to Proceedings." *Id*. at 32. Under Objection I, the Knotts stated that "[t]he proposed highway improvement project as described in paragraph VII of [the Complaint] does not cross the [Knotts'] real estate and is not necessary for the highway improvement project as described." *Id*. at 32. The State, noting a scrivener's error, filed a motion to substitute existing Paragraph VII with the proper description of the land; a description that included the Knotts' Parcel 17. The trial court granted the State's motion on December 19, 2011. The Knotts subsequently raised no objection to the description of the affected property either at trial or on appeal.

The Knotts' additional objections to the proceedings included the following: (1) INDOT violated the National Environmental Policy Act ("NEPA") by failing to prepare a Supplemental Tier 1 Environmental Impact Statement ("EIS") based on significant information bearing on the environmental and economic impacts of its proposed I-69 Project, *Appellant's App.* at 34; (2) INDOT and the Federal Highway Administration ("FHWA") violated NEPA by failing to prepare a "Supplemental Tier 2 EIS for Section 4 based on significant new information bearing on the environmental impacts of agency action," *id*. at 46; (3) INDOT and FHWA violated NEPA by preparing a "Tier 2 EIS for Section 4 in bad faith, arbitrarily circumventing involvement of owners of historic and archaeological

3

properties, engaging in theft or conversion of artifacts, concealing material information from the public regarding air pollution[,] public health impacts[,] and violations of law, and ignoring documented unacceptable adverse impacts," *id*. at 49; (4) "the I-69 . . . [P]roject is in violation of Section 4(f) of the Transportation Act," *id*. at 52; and (5) INDOT's approval of I-69 section 4 and issuance of a Clean Air Act ("CAA") Conformity Determination violate the CAA, *id*. at 55.

The State responded with a motion to strike the Knotts' objections, contending that, except for the scrivener's error in Paragraph VII, which had been remedied, the objections were legally deficient because their objections did not address the clear authority of the State to acquire Parcel 17 for the appropriate purpose of constructing the I-69 Project. On February 20, 2012, the trial court entered an order striking the Knotts' objections, and thereafter, entered the Order of Appropriation. The Knotts now appeal.

## DISCUSSION AND DECISION

The State has inherent authority to take private property for public use. *Sagarin v. City of Bloomington*, 932 N.E.2d 739, 744 (Ind. Ct. App. 2010), *trans. denied* (2011), *cert. denied*, 132 S. Ct. 117 (2011) (citing *Murray v. City of Lawrenceburg,* 925 N.E.2d 728, 731 (Ind. 2010)). Eminent domain proceedings for seizing private property are powerful instruments of government. *Id.* (citing *Derloshon v. City of Fort Wayne ex rel. Dep't of Redevelopment*, 250 Ind. 163, 166, 234 N.E.2d 269, 271 (1968)). As long as the governmental entity intends to use the land for a public purpose that is constitutional, there are few defenses to prevent a taking. *Id.* Such powers and rights, however, are not

4

unlimited. *Derloshon*, 250 Ind. at 166, 234 N.E.2d at 271.

In eminent domain proceedings the focus of our judicial review is narrow. *See Berman v. Parker,* 348 U.S. 26, 32 (1954). "Significantly the courts are not to infringe upon the administrative act of determining the necessity or reasonableness of the decision to appropriate and take land." *Indianapolis Power & Light Co. v. Barnard*, 175 Ind. App. 308, 312, 371 N.E.2d 408, 411 (1978). Like the trial court, we must restrict our review to whether the condemnation proceedings were legal, whether the condemning authority had authority to condemn the property in question, and whether the property was to be taken for a public purpose. *City of Evansville ex rel. Dep't of Redevelopment v. Reising*, 547 N.E.2d 1106, 1111 (Ind. Ct. App. 1989); *State ex rel. Ind. Dep't of Conservation v. Barber*, 246 Ind. 30, 36, 200 N.E.2d 638, 640 (1964). *See also* Ind. Code § 32-24-1-8. Additionally, we have the power to question whether the condemnation was fraudulent, capricious, or illegal. *Reising*, 547 N.E.2d at 1111; *Barber*, 246 Ind. at 36, 200 N.E.2d at 640-41. In addressing allegations of fraud or bad faith, however, we are limited to considering only whether there was fraud, bad faith, capriciousness, or illegality as to the necessity of the taking, i.e., whether "the property taken will not be used for a public purpose, or the proceeding is a subterfuge to convey the property to a private use." *Cemetery Co. v. Warren Sch. Twp. of Marion Cty.,* 236 Ind. 171, 188, 139 N.E.2d 538, 546 (Ind. 1957).

The Knotts raised a valid objection to the eminent domain proceedings on the basis that their property was not included in Paragraph VII, which described the property subject to appropriation. This deficiency, however, was remedied when, without objection, the trial

court allowed the State to amend Paragraph VII to include the description of Parcel 17. Once remedied, this was no longer a valid objection.

The Knotts contend that their remaining objections should not have been stricken because they alleged that the State and INDOT acted illegally and in bad faith because the I-69 Project is proceeding in violation of certain federal laws. The Knotts assert that the State's failure to file a supplemental EIS was a violation of NEPA, and thus posed a valid objection to the condemnation proceeding. NEPA requires all federal agencies to prepare an EIS addressing the impact on the quality of the human environment prior to embarking on any *major federal action*. 42 U.S.C. § 4332(2)(C) (emphasis added). When new information affects a major federal action, NEPA also requires a federal agency to file a supplemental EIS. Relying on this NEPA requirement, the Knotts assert that, based on the State's relationship with the FHWA, the I-69 Project is "a major federal action" under NEPA, and therefore the State's failure to prepare a supplemental EIS is fatal to the State's attempt to condemn Parcel 17. The Knotts also object to the condemnation on the basis that the State failed to comply with other federal laws in connection with this major federal action, including the CAA and Section 4(f) of the Transportation Act. We find the State's failure to comply with these federal statutes has no impact on the State's authority to proceed with the condemnation at issue.

While the Knotts object to the acquisition of their property on the grounds that the State failed to comply with NEPA, CAA, and the Transportation Act, Indiana's eminent domain laws do not require the State to comply with these federal statutes prior to

6

appropriating private property for a public purpose. *See generally*, Ind. Code Art. 32-24. "The issues in the objections stage of an eminent domain case are narrow and relate only to the questions related to the proposed acquisition of real estate." *See State ex rel. Bd. of Aviation Comm'rs of City of Warsaw v. Kosciusko Cnty. Superior Ct.*, 430 N.E.2d 754, 755 (Ind. 1982).

In *J.M. Foster Co. v. Northern Indiana Public Service Co.,* 164 Ind. App. 72, 326 N.E.2d 584 (Ind. Ct. App. 1975), our court explained the rationale behind this conclusion. Northern Indiana Public Service Co. ("NIPSCO"), a public utility, filed a complaint to condemn a right of way over real estate owned by Foster. 164 Ind. App. at 73, 326 N.E.2d at 585. Foster filed objections to the taking, and the trial court entered an order overruling Foster's objections. On appeal, Foster maintained that NIPSCO had not negotiated in good faith. Specifically, Foster objected to the proposed condemnation on the basis that NIPSCO had failed to file an environmental impact report as required by an Indiana environmental statute. *Id*. at 80, 326 N.E.2d at 589. In determining that Foster's objection was improper, this court reasoned:

> The fulfillment of any duty which [the environmental statute] might arguably impose upon a public utility exercising the power of eminent domain cannot be regarded as a prerequisite to the filing of a complaint for condemnation where the order sought thereby could do no more than effect an eventual shift in title. Although action by the Environmental Board pursuant to the filing of an impact report might conceivably force an alteration of plans, such a consideration is, under existing authority, foreign to proceedings for condemnation and more properly the subject of an . . . environmental suit[].

*Id*. at 80, 326 N.E.2d at 589. Stated differently, this court determined that Foster's objection to the condemnation on the basis that the State failed to comply with environmental laws was

7

improper because the objection did not address the issue of the acquisition of property, but instead addressed issues related to the possible environmental impact of the project as a whole.

In *Chambers v. Public Service Co. of Indiana, Inc.*, 265 Ind. 336, 355 N.E.2d 781 (1976), the court reached a similar conclusion when faced with a question of whether government approval must be obtained prior to the acquisition of private property through eminent domain. In *Chambers*, the parties agreed that Public Service Co. of Indiana ("PSI"), a public utility, had to obtain government approval before it could build a nuclear generating facility on the land PSI sought to acquire for that purpose. Notwithstanding this agreement, our court, noting that "prior approval by a governmental authority is not necessary to land acquisition by eminent domain," held that it was "not necessary for PSI to have obtained the necessary permits from the federal agencies prior to acquiring the land." 265 Ind. at 342, 355 N.E.2d at 785.

Finally, in *Indianapolis Power & Light Co. v. Barnard*, the public utility, IPALCO, sought to condemn a right of way across the Barnards' land for the purpose of placing electrical transmission lines on the land. 175 Ind. App. at 309, 371 N.E.2d at 409. The Barnards filed their objections asserting that the erection of transmission lines would violate the so-called High Structures Act "if a permit [was] not obtained from the State Aeronautics Commission pursuant to such law." *Id*. at 310, 371 N.E.2d at 410. Finding that IPALCO had yet to obtain the required permit, the trial court sustained the Barnards' objections. On appeal, our court first found that IPALCO had the statutory authority to condemn the

8

property in question, and then addressed the issue of whether intervening contingencies concerning restrictions on the use of the land sought to be condemned were barriers to the right to exercise the power of eminent domain. The Barnards maintained "that until IPALCO receives the permit of approval and has complied with all of the regulations pertaining to the ultimate use for which the land is sought[,] then a contingency exists which precludes a present necessity for the condemnation." *Id*. at 314, 371 N.E.2d at 412. Our court disagreed. Citing to *Chambers*, this court held that "IPALCO did not need a permit from the Aeronautics Commission . . . before it could exercise its power of eminent domain." *Id*. at 315, 371 N.E.2d at 413. Our court determined that since the necessity for a public use was clearly demonstrated, IPALCO's authority for the condemnation was properly exercised. *Id*. at 317, 371 N.E.2d at 413.

Indiana Code section 32-24-1-5.8 recognizes INDOT's authority "to acquire a parcel of land or property right for the construction, reconstruction, improvement, maintenance or repair of a: (1) state highway; or (b) toll road project or toll bridge project. Furthermore, INDOT or a "highway authority may acquire private or public property and property rights for *limited access facilities* and service roads, . . . by gift, devise, purchase, or condemnation for the laying out, widening, or improvement of highways and streets within their respective jurisdictions." Ind. Code § 8-23-8-3. These statutes vest discretion in INDOT such that if, in its judgment, the real estate sought to be condemned is necessary for the use of the highways and streets, INDOT has the power to appropriate and condemn such real estate. INDOT's judgment as to necessity of appropriating this land for the I-69 Project cannot be questioned

9

or superseded by the judgment of this court. *See Barnard*, 175 Ind. App. at 312, 371 N.E.2d at 411 (courts are not to infringe upon administrative act of determining necessity or reasonableness of decision to appropriate and take land); *Cemetery Co.*, 236 Ind. at 188, 139 N.E.2d at 546 (same).

In the instant case, the federal statutes upon which the Knotts' objections depend (NEPA, CAA and Section 4(f) of the Transportation Act) do not concern the acquisition of property, but instead are related to collateral issues concerning the I-69 Project. The I-69 Project is not under review in this eminent domain action.[1] While we recognize that these federal statutes provide important environmental protections and may require the State or INDOT to take certain steps prior to the commencement of construction of the I-69 Project, we hold that the federal statutes at issue have no bearing on the condemnation proceeding itself. The trial court did not err in striking the Knotts' objections or in entering the Order of Appropriation. While we affirm the State's authority to take the Knotts' property, we regret the hardship that this condemnation may cause the Knotts, notwithstanding the payment of just compensation.

Affirmed.

BAKER, J., and MAY, J., concur.

---

[1] We note that the I-69 Project is in fact under review in a number of cases, some of which are: *Hoosier Environmental. Council v. U.S. Army Corps of Engineers*, No. 1:11-CV-0202-LJM-DML, 2012 WL 3028014 (S.D. Ind. July 24, 2012); *Citizens for Appropriate Rural Roads, Inc. v. LaHood*, No. 1:11-CV-1031-SEB-DML, 2012 WL 442747 (S.D. Ind. Feb. 10, 2012); *Citizens for Appropriate Rural Roads, Inc. v. LaHood*, No. 1:11-CV-01031-SEB-DML, 2012 WL 442751 (S.D. Ind. Feb. 10, 2012); and *Hoosier Environmental Council v. U.S. Department of Transportation*, No. 1:06-CV-1442-DFH-TAB, 2007 WL 4302642 (S.D. Ind. Dec. 10, 2007).